[No. B210789. Second Dist., Div. Three. Nov. 23, 2009.]

HOFFMAN STREET, LLC, et al., Plaintiffs and Appellants, v.
CITY OF WEST HOLLYWOOD et al., Defendants and Respondents.

**COUNSEL**

Jeffer, Mangels, Butler & Marmaro, Benjamin M. Reznik, Joel D. Deutsch, Paul A. Kroeger and Elizabeth Thompson for Plaintiffs and Appellants.

Jenkins & Hogin, Michael Jenkins and Christi Hogin for Defendants and Respondents.

OPINION

**CROSKEY, J.**—Hoffman Street, LLC (Hoffman), and Harper Project, LLC (Harper) (collectively Petitioners), seek to redevelop their properties in the City of West Hollywood by demolishing existing apartment buildings and constructing new condominium projects. The city determined that the development applications were incomplete and later adopted an interim ordinance restricting development in areas zoned for multifamily residential uses.[1] After the city council extended the interim ordinance for one year, Petitioners filed a combined petition for writ of mandate and complaint against the city, its city council, and its community development department. Petitioners challenge the extension of the interim ordinance under the Planning and Zoning Law (Gov. Code, § 65000 et seq.), the Permit Streamlining Act (*id.*, § 65920 et seq.), and the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.). They also seek damages based on the denial of due process, denial of equal protection, and inverse condemnation. After a hearing on the merits of the counts seeking a writ of mandate, the trial court entered a judgment denying the petition and denying any relief on the complaint. Petitioners appeal the judgment.

We conclude that the city council failed to make findings required under Government Code section 65858, subdivision (c) upon extending the interim ordinance and that the extension therefore was contrary to law and invalid. As a result, the trial court's denial of Petitioners' petition for a writ of mandate was improper thus requiring a reversal of the judgment as to the first count of Petitioners' combined pleading. We also conclude, however, that Petitioners have shown no prejudicial error in the denial of relief on their second count alleging a violation of the Permit Streamlining Act, and that the third count alleging a CEQA violation is moot. Finally, by entering judgment on counts four through seven without affording the parties an opportunity to be heard on those counts, the trial court deprived Petitioners of their right to a fair hearing, thus requiring a reversal of the judgment as to those counts as well.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Development Applications*

Hoffman owns a parcel of real property located at 1350 North Hayworth Avenue in the city. The area is zoned R4, which allows multifamily residential uses. Hoffman submitted an application to the city's community development department in January 2006, seeking to demolish the existing 16-unit

---

[1] Our references to the city may include the City of West Hollywood, its city council, and/or its community development department, as appropriate in context.

apartment building on the property and build a 17-unit condominium complex. The department sent a letter to Hoffman on February 16, 2006, stating that the application was incomplete and requesting that Hoffman provide six items and conduct a neighborhood meeting as required by the municipal code. The department sent Hoffman another letter on February 27, 2006, requesting an additional 57 items.

Hoffman held a neighborhood meeting in April 2006. A city resident submitted an application to the city in April 2006, seeking to designate the property a historical resource. The city's Historical Preservation Committee conducted a hearing and denied the application in October 2006. The resident appealed the denial to the city council. After a hearing on the appeal in January 2007, the city council continued the matter several times pending the preparation of a draft Historical Resources Survey Update. The city refused to accept further materials in support of the development application until after a decision on that appeal. The city denied the appeal in June 2007, without the benefit of the awaited Historical Resources Survey Update, on the ground that the appeal presented no new information, as required.

Harper owns a parcel of real property located at 1264 North Harper Avenue in the city. The area is zoned R4. Harper submitted an application to the city's community development department in January 2007, seeking to demolish the existing 15-unit apartment building on the property and build a 16-unit condominium complex. The department sent a letter to Harper on January 29, 2007, stating that the application was incomplete and requesting that Harper provide numerous items of additional information and conduct a neighborhood meeting. Harper held a neighborhood meeting in March 2007 and provided additional information in an effort to complete its application.

## 2. *Interim Ordinance and Its Extension*

The city council adopted an interim ordinance (West Hollywood Ord. No. 07-759U) on June 4, 2007, temporarily prohibiting the issuance of permits or other approvals for the development of new multifamily dwellings in the city's R3 and R4 zoning districts, with the exception of developments in compliance with specified interim zoning standards. The ordinance stated that its purpose was to increase both the number and the affordability of multifamily housing units in development projects in areas zoned for multifamily housing. The city adopted the ordinance as an urgency measure.

The interim ordinance stated that the city council found that "the recent proliferation of applications for multi-family structures in the R3 and R4 zoning districts with both fewer and larger units than are desirable to meet the City's unmet housing goals . . . and the significant unmet need for smaller

affordable housing units are posing a current and immediate threat to the public health, safety and welfare." It stated that the city was preparing to revise the land use and housing elements of its general plan, including new regulations governing the construction of multifamily dwellings. The ordinance stated that it was adopted pursuant to Government Code section 65858 and that it would remain in effect for 45 days, unless it was extended in accordance with section 65858.

The interim zoning standards allowed the construction of (1) "[p]rojects for multi-family housing which were deemed complete or approved prior to May 21, 2007";[2] (2) multifamily dwellings in which at least one-half of the units were affordable, as defined in the municipal code; (3) multifamily dwellings in which the units did not exceed specified maximum size limits, the buildings did not exceed a specified height, and the net increase in total units was at least threefold; (4) public facilities; (5) projects consolidating adjacent parcels in particular areas, provided that the projects included "a significant commercial enhancement on Sunset Boulevard"; or (6) projects adding new residential units to existing multifamily dwellings without the demolition of existing units.

The city council adopted an ordinance (West Hollywood Ord. No. 07-767U) on July 16, 2007, extending the interim ordinance for 10 months and 15 days.[3] The ordinance stated some of the same findings made in the interim ordinance concerning urgency and the need for affordable housing. It also revised the interim zoning standards by increasing the maximum size limits for some units and allowing the construction of multifamily dwellings on land where there were no existing residential buildings or only single-family residential buildings.

### 3. *Trial Court Proceedings*

Petitioners filed their combined petition for a writ of mandate and complaint against the city, its city council, and its community development department in October 2007. Petitioners allege that the city council, upon extending the interim ordinance, failed to make the findings set forth in paragraphs (1) through (3) of Government Code section 65858, subdivision (c), as required. They also allege that the extended interim ordinance may have a significant impact on the environment and that the city failed to comply with CEQA. They allege further that the city intentionally delayed

---

[2] Petitioners and the city apparently construe this to mean projects for which the city, before May 21, 2007, had either approved a development application or determined that the application was complete.

[3] According to Petitioners, the city extended the interim ordinance a second time on May 5, 2008, for an additional one-year period.

the processing of Hoffman's application to ensure that the project would not qualify under the interim zoning standards as a project for which the application was complete as of May 21, 2007.

Petitioners' combined pleading alleges counts for (1) failure to comply with Government Code section 65858, subdivision (c) (by both Petitioners), seeking a writ of mandate ordering the city to set aside the extension of the interim ordinance; (2) failure to comply with the Permit Streamlining Act (by Hoffman), seeking a writ of mandate establishing that Hoffman's application is exempt from the terms of the interim ordinance as a previously completed application; (3) violation of CEQA (by both Petitioners), seeking a writ of mandate ordering the city to set aside the extension of the interim ordinance; (4) denial of procedural due process under the United States Constitution, pursuant to title 42 United States Code section 1983 (section 1983) (by Hoffman), seeking damages arising from the delay in the processing of Hoffman's application; (5) denial of equal protection under the United States and California Constitutions, pursuant to section 1983 (by Hoffman), seeking damages arising from the delay in the processing of Hoffman's application; (6) inverse condemnation (by both Petitioners), seeking damages; and (7) declaratory relief as to all of the foregoing (by both Petitioners).

The trial court conducted a hearing on the merits of only the first three counts seeking a writ of mandate. In a minute order filed on August 18, 2008, the court concluded that the requirement that the legislative body adopt the findings set forth in paragraphs (1) through (3) of Government Code section 65858, subdivision (c) in order to extend an interim ordinance did not apply to projects involving the demolition of affordable housing units, pursuant to subdivision (g) of section 65858, and that Petitioners had failed to show that the existing apartment buildings contained no affordable housing units. It concluded that the city was not required to make those findings upon extending the interim ordinance and that the extension was neither arbitrary nor capricious. The trial court also concluded that the administrative remedy of an appeal to the city council was available for "any denial of an application for a permit," and that Petitioners had failed to exhaust that administrative remedy. The court stated further that Petitioners had failed to exhaust their administrative remedy with respect to their challenge to the extension of the interim ordinance by failing to argue to the city council that additional findings were required under section 65858, subdivision (c), and that they had failed to exhaust their administrative remedy with respect to their argument that the city was equitably estopped from asserting that their development applications were incomplete by failing to raise that point before the city council.

The trial court stated with respect to the CEQA count that Government Code section 65858, subdivision (a) expressly exempted from CEQA the

adoption of an interim ordinance such as the one adopted by the city, and that the extensive procedural requirements of CEQA were "fundamentally inconsistent" with an urgency measure adopted pursuant to section 65858. It stated further that there was no evidence to support a fair argument that the interim ordinance would cause a significant environmental impact.

The minute order concluded by directing the city to prepare a proposed judgment. The order did not specifically address counts four through seven. The city submitted a proposed judgment in favor of the city on all counts alleged in the petition and complaint. Petitioners objected to the proposed judgment on the ground that the court had conducted no hearing on the merits of counts four through seven. The court overruled the objection and entered a judgment in September 2008 denying the petition for writ of mandate and denying Petitioners any relief on any of the counts alleged in the complaint. Petitioners timely appealed the judgment.

### 4. *Zoning Amendments*

The city adopted new zoning ordinances while this appeal was pending, amending the regulations governing the development of multifamily dwellings in the city's R3 and R4 zoning districts. The amendments include new maximum average unit sizes and a requirement that new developments be built to a minimum of 90 percent of the allowable density.[4]

## *CONTENTIONS*

Petitioners contend (1) the city was required to make the findings set forth in paragraphs (1) through (3) of Government Code section 65858, subdivision (c) upon extending the interim ordinance, but failed to do so; (2) the trial court's finding that Petitioners failed to exhaust their administrative remedies in connection with both their challenge to the extension and their contention that Hoffman's application should be exempt from the interim ordinance as a previously completed application was error; (3) the extension of the interim ordinance was not exempt from CEQA; and (4) the dismissal of counts four through seven without a hearing on the merits or any statutory authority for the dismissal was error.

## *DISCUSSION*

### 1. *Government Code Section 65858*

Government Code section 65858 authorizes a city or county to adopt an ordinance that temporarily imposes land use restrictions that are consistent

---

[4] We grant Petitioners' request for judicial notice of West Hollywood Ordinances Nos. 09-812 and 09-813U adopted by the city council. (Evid. Code, § 452, subd. (b).)

with a land use plan or zoning proposal that the city or county may consider adopting. (*Id.*, subd. (a).)[5] The legislative body of the city or county may adopt such an interim ordinance as an urgency measure "to protect the public safety, health, and welfare," by a four-fifths vote, without notice or a hearing. (Gov. Code, § 65858, subd. (a).) Or, "[a]lternatively, an interim ordinance may be adopted by a four-fifths vote following notice pursuant to Section 65090 and public hearing . . ." (*id.*, subd. (b)).

An interim ordinance expires 45 days after its adoption unless the legislative body, by a four-fifths vote, extends it. (Gov. Code, § 65858, subds. (a), (b).) An interim ordinance adopted without notice or a hearing may be extended once for a period of 10 months and 15 days and a second time for a period of one year. (*Id.*, subd. (a).) An interim ordinance adopted following notice and a hearing may be extended for a period of 22 months and 15 days. (*Id.*, subd. (b).)

An interim ordinance may not be adopted or extended "unless the ordinance contains legislative findings that there is a current and immediate threat to the public health, safety, or welfare, and that the approval of additional subdivisions, use permits, variances, building permits, or any other applicable entitlement for use which is required in order to comply with a zoning ordinance would result in that threat to public health, safety, or welfare." (Gov. Code, § 65858, subd. (c).) Additional requirements apply if the legislative body seeks to extend an interim ordinance "that has the effect of denying approvals needed for the development of projects with a significant component of multifamily housing." (*Ibid.*) The legislative body may extend such an interim ordinance only "upon written findings adopted by the legislative body, supported by substantial evidence on the record, that *all* of the following conditions exist:

"(1) The continued approval of the development of multifamily housing projects would have a specific, adverse impact upon the public health or safety. As used in this paragraph, a 'specific, adverse impact' means a significant, quantifiable, direct, and unavoidable impact, based on objective, identified written public health or safety standards, policies, or conditions as they existed on the date that the ordinance is adopted by the legislative body.

---

[5] Government Code section 65858, subdivision (a), states in part: "Without following the procedures otherwise required prior to the adoption of a zoning ordinance, the legislative body of a county, city, including a charter city, or city and county, to protect the public safety, health, and welfare, may adopt as an urgency measure an interim ordinance prohibiting any uses that may be in conflict with a contemplated general plan, specific plan, or zoning proposal that the legislative body, planning commission or the planning department is considering or studying or intends to study within a reasonable time."

"(2) The interim ordinance is necessary to mitigate or avoid the specific, adverse impact identified pursuant to paragraph (1).

"(3) There is no feasible alternative to satisfactorily mitigate or avoid the specific, adverse impact identified pursuant to paragraph (1) as well or better, with a less burdensome or restrictive effect, than the adoption of the proposed interim ordinance." (Gov. Code, § 65858, subd. (c), italics added.)

Government Code section 65858, subdivision (g) states: "For purposes of this section, 'development of multifamily housing projects' does not include the demolition, conversion, redevelopment, or rehabilitation of multifamily housing that is affordable to lower income households, as defined in Section 50079.5 of the Health and Safety Code, or that will result in an increase in the price or reduction of the number of affordable units in a multifamily housing project." The language "projects with a significant component of multifamily housing" in section 65858, subdivision (c), is defined as "projects in which multifamily housing consists of at least one-third of the total square footage of the project." (*Id.*, subd. (h).)

■ Thus, a city or county may adopt an interim ordinance to prevent development that would be inconsistent with a contemplated land use plan or zoning proposal if the legislative body, by a four-fifths vote, finds that such development would pose an immediate threat to the public health, safety, or welfare. (Gov. Code, § 65858, subds. (a)–(c).) Such an interim ordinance is valid for a period of 45 days, but can be extended so that the full duration of the measure is up to two years. (*Id.*, subds. (a), (b).) The legislative body, however, cannot extend an interim ordinance "that has the effect of denying approvals needed for the development of projects with a significant component of multifamily housing" (*id.*, subd. (c)) unless the legislative body makes the findings set forth in paragraphs (1) through (3) of Government Code section 65858, subdivision (c).

2. *Government Code Section 65858, Subdivision (g) Limits the Definition of "Multifamily Housing Projects" for Purposes of the Statute*

■ The city contends this appeal is moot as to the validity of the extension of the interim ordinance because the extension has expired by its own terms. Petitioners contend the validity of the extension is relevant to counts four through seven and for other reasons. We need not decide whether the appeal is moot in this regard because we have the discretion to consider the appeal in any event. An appellate court has the discretion to decide an appeal that, although technically moot, presents an issue of continuing public interest. (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1001

[111 Cal.Rptr.2d 564, 30 P.3d 57].) The exercise of such discretion is particularly appropriate if the issue ordinarily arises in controversies that are so short lived as to evade normal appellate review, as here. (*Chantiles v. Lake Forest II Master Homeowners Assn.* (1995) 37 Cal.App.4th 914, 921 [45 Cal.Rptr.2d 1].)

■ The purpose of the requirement under Government Code section 65858, subdivision (c) that the legislative body make additional findings, supported by substantial evidence in the record, upon the extension of an interim ordinance "that has the effect of denying approvals needed for the development of projects with a significant component of multifamily housing" (*ibid.*) is to avoid undue restrictions on the development of multifamily housing.[6] The legislative body adopting such an extension must find that an extension is necessary to mitigate or avoid a specific, adverse impact on public health or safety identified by the legislative body, and that there is no feasible alternative to satisfactorily mitigate or avoid that impact, as stated in paragraphs (1) through (3) of subdivision (c). Subdivision (g) excludes from the definition of "multifamily housing projects" certain types of developments that would decrease the supply or the affordability of multifamily housing, as we will explain.

■ "Our fundamental task in construing a statute is to ascertain the legislative intent so as to effectuate the purpose of the law. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) Because the statutory language ordinarily is the most reliable indicator of legislative intent, we begin by examining the words of the statute. (*Ibid.*) We give the words of the statute their ordinary and usual meaning and construe them in the context of the statute as a whole and the entire scheme of law of which it is a part. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].) If the language is clear and a literal construction would not result in absurd consequences that the Legislature did not intend, we presume that the

---

[6] Government Code section 65589.5, officially designated the Housing Accountability Act (*id.*, subd. (*o*)) but commonly known as the anti-NIMBY (not in my backyard) law, declares, "The lack of housing, including emergency shelters, is a critical problem that threatens the economic, environmental, and social quality of life in California," and, "The excessive cost of the state's housing supply is partially caused by activities and policies of many local governments that limit the approval of housing, increase the cost of land for housing, and require that high fees and exactions be paid by producers of housing." (*Id.*, subd. (a)(1), (2).) Section 65589.5, subdivision (d) states that a local agency may not disapprove a project that would provide affordable housing unless it makes one of several enumerated "written findings, based upon substantial evidence in the record." Section 65589.5, subdivision (d) and Government Code section 65858, subdivision (c) serve similar purposes, in that the former was designed to cause local governments to reduce barriers to the production of affordable housing, while the latter was designed to prevent local governments from adopting interim ordinances as barriers to the production of multifamily housing.

Legislature meant what it said and the plain meaning governs. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) If the language is ambiguous, we may consider a variety of extrinsic aids, including the purpose of the statute, legislative history, and public policy. (*Ibid.*)" (*Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1448–1449 [63 Cal.Rptr.3d 816].)

Government Code section 65858, subdivision (c) states in relevant part, "any interim ordinance adopted pursuant to this section that has the effect of denying approvals needed for the *development of projects with a significant component of multifamily housing* may not be extended except upon written findings . . . ." (Italics added.) The first of the required findings is a finding that "[t]he continued approval of the *development of multifamily housing projects* would have a specific, adverse impact upon the public health or safety," as defined. (*Id.*, subd. (c)(1), italics added.) These two italicized phrases are similar but not identical. Section 65858 defines " 'projects with a significant component of multifamily housing' " as "projects in which multifamily housing consists of at least one-third of the total square footage of the project" (*id.*, subd. (h)), and states that " 'development of multifamily housing projects' " does not include certain types of projects (*id.*, subd. (g)). The statute does not explicitly state, however, that "development of projects with a significant component of multifamily housing" (*id.*, subd. (c)) does not include the types of projects described in subdivision (g).

We believe that the phrases "development of projects with a significant component of multifamily housing" (Gov. Code, § 65858, subd. (c)) and "development of multifamily housing projects" (*id.*, subd. (c)(1)) were intended to have the same meaning. The additional findings set forth in paragraphs (1) through (3) of subdivision (c) are required only if the extension of an interim ordinance has the effect of preventing the "development of projects with a significant component of multifamily housing," while the three required findings all relate exclusively to the "development of multifamily housing projects," as described in paragraph (1). In our view, this indicates that the Legislature used the phrase "development of multifamily housing projects" as a shortened reference to "development of projects with a significant component of multifamily housing." For purposes of the statute, the two phrases are synonymous.

Government Code section 65858, subdivision (g), which expressly limits the meaning of "development of multifamily housing projects," therefore limits the meaning of "development of projects with a significant component of multifamily housing" as well. Thus, the "development of projects with a significant component of multifamily housing" does not include the development of the types of projects described in subdivision (g).

If an interim ordinance has the effect of denying approvals needed for the development of only those types of projects described in subdivision (g), the additional findings set forth in paragraphs (1) through (3) of subdivision (c) are not required. The Legislature apparently concluded that a development that involves the "demolition, conversion, redevelopment, or rehabilitation of multifamily housing that is affordable to lower income households" or results in "an increase in the price or reduction of the number of affordable units in a multifamily housing project" (*id.*, subd. (g)) would reduce the supply or affordability of affordable housing, and that the findings set forth in paragraphs (1) through (3) of subdivision (c) should not be required for an interim ordinance affecting *only* such developments.

The legislative history supports this construction. Legislative committee reports and analyses prepared in connection with the bill that added the second sentence of Government Code section 65858, subdivision (c); paragraphs (1) through (3) of subdivision (c); and subdivisions (g) and (h) stated that the requirement of additional findings would not apply to interim ordinances relating to the types of projects described in subdivision (g). (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 1098 (2001–2002 Reg. Sess.) as amended Aug. 28, 2001, p. 3; Assem. Com. on Local Government, Analysis of Sen. Bill No. 1098 (2001–2002 Reg. Sess.) as amended June 28, 2001, p. 1; Assem. Com. on Housing and Community Development, Analysis of Sen. Bill No. 1098 (2001–2002 Reg. Sess.) June 27, 2001 [proposed amendment], p. A.) The legislative history also indicates that the bill imposed findings requirements similar to those under the Housing Accountability Act in order to prevent local governments from circumventing the requirements of that act through the adoption of interim ordinances. (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 1098 (2001–2002 Reg. Sess.) as amended Aug. 28, 2001, pp. 2, 4.)[7]

█ Our construction is consistent with the purpose of Government Code section 65858, subdivision (c) to avoid undue restrictions on the development of multifamily housing and the purpose of section 65589.4, subdivision (d) to reduce barriers to the production of affordable housing. Those purposes both are served by requiring the legislative body to make the additional findings set forth in paragraphs (1) through (3) of section 65858, subdivision (c) if the extension of an interim ordinance has the effect of preventing the development of multifamily housing, but those purposes would not be served by requiring such additional findings upon extending an interim ordinance that prohibits only those projects that would decrease the supply or reduce the affordability of affordable housing.

---

[7] We take judicial notice of the cited legislative history materials. (*People v. Superior Court* (*Ferguson*) (2005) 132 Cal.App.4th 1525, 1532 [34 Cal.Rptr.3d 481].)

### 3. *The City Was Required to Make the Additional Findings Set Forth in Paragraphs (1) Through (3) of Government Code Section 65858, Subdivision (c)*

Petitioners allege in their first count that upon extending the interim ordinance, the city was required to make the findings set forth in paragraphs (1) through (3) of Government Code section 65858, subdivision (c), but failed to make those findings.[8] The trial court concluded that such findings are not required upon extending an interim ordinance that has the effect of denying approvals for the types of developments described in subdivision (g). The trial court stated that Petitioners were not entitled to a writ of mandate because they failed to show that their proposed projects were not the types of projects described in subdivision (g).

■ We conclude that the city was required to make the findings set forth in paragraphs (1) through (3) of Government Code section 65858, subdivision (c) if the interim ordinance had the effect of denying approvals needed for the development of projects with a significant component of multifamily housing, regardless of whether the interim ordinance also had the effect of denying approvals for the types of developments described in subdivision (g) and regardless of whether Petitioners' proposed projects were the types of developments described in subdivision (g). Subdivision (g) states, in essence, that certain types of projects are not considered "multifamily housing projects" for purposes of section 65858, but does not relieve a city or county of the need to make the findings set forth in paragraphs (1) through (3) of subdivision (c) upon extending an interim ordinance that has the effect of denying approvals necessary for the development of projects that are considered multifamily housing projects under the statute. Moreover, whether the statutory findings are required depends not on the effect of an interim ordinance on a particular applicant challenging an extension, but on the effect of the interim ordinance generally.

■ We reject the city's argument that an interim ordinance "has the effect of denying approvals needed for the development of projects with a significant component of multifamily housing" (Gov. Code, § 65858, subd. (c)) within the meaning of the statute only if the interim ordinance prohibits any and all development of projects with a significant component of multifamily

---

[8] The city council's extension of the interim ordinance was a legislative act. (*Arnel Development Co. v. City of Costa Mesa* (1980) 28 Cal.3d 511, 516–517 [169 Cal.Rptr. 904, 620 P.2d 565] [the enactment or amendment of a zoning ordinance is a legislative act].) "The opportunity to participate in a public hearing prior to a legislative action does not constitute an administrative remedy subject to exhaustion." (*Lindelli v. Town of San Anselmo* (2003) 111 Cal.App.4th 1099, 1105 [4 Cal.Rptr.3d 453].) Accordingly, the trial court's finding that Petitioners failed to exhaust their administrative remedy with respect to the requirement of additional findings was error.

housing. Neither the statutory language nor the purpose of subdivision (c) to avoid undue restrictions on the development of multifamily housing suggests that the additional findings are required only if the interim ordinance prohibits all development of projects with a significant component of multifamily housing.

■ The city also argues that the language "the effect of denying approvals" in Government Code section 65858, subdivision (c) refers to development applications that have already been approved, or "approvals in hand." The city argues that the interim ordinance did not apply to development applications approved before its effective date and therefore did not have "the effect of denying approvals needed for the development of projects with a significant component of multifamily housing" (*ibid.*) within the meaning of the statute. We conclude that the language "the effect of denying approvals" (*ibid.*) in this context refers to the denial of applications for development approvals, and reject the city's contrary construction.

■ The interim ordinance temporarily prohibited the issuance of permits or other approvals for the development of any "new multi-family structures" in the city's R3 and R4 zoning districts, with the exception of developments in compliance with the interim zoning standards. It stated that the term "multi-family structures" was defined as stated in article 19-6 of the city's municipal code. That definition encompassed buildings used or designed for use as dwellings by three or more families living separately.[9] We conclude that by prohibiting the issuance of permits or other approvals for the development of any "new multi-family structures" not in compliance with the interim zoning standards, the interim ordinance had the effect of requiring the denial of some applications for the development of multifamily housing and therefore had "the effect of denying approvals needed for the development of projects with a significant component of multifamily housing" (Gov. Code, § 65858, subd. (c)) within the meaning of the statute. Because the interim ordinance had that effect, the city was required to make the findings set forth in paragraphs (1) through (3) of Government Code section 65858, subdivision (c).

### 4. *The City Failed to Make the Required Additional Findings*

A legislative body adopting or extending any interim ordinance must find "that there is a current and immediate threat to the public health, safety, or welfare, and that the approval of additional subdivisions, use permits, variances, building permits, or any other applicable entitlement for use which is

---

[9] We take judicial notice of article 19-6 of the West Hollywood Municipal Code. (Evid. Code, § 452, subd. (b).)

required in order to comply with a zoning ordinance would result in that threat to public health, safety, or welfare." (Gov. Code, § 65858, subd. (c).) A legislative body extending an interim ordinance "that has the effect of denying approvals needed for the development of projects with a significant component of multifamily housing" must make additional written findings, "supported by substantial evidence on the record, that all of the following conditions exist:

"(1) The continued approval of the development of multifamily housing projects would have a specific, adverse impact upon the public health or safety. As used in this paragraph, a 'specific, adverse impact' means a significant, quantifiable, direct, and unavoidable impact, based on objective, identified written public health or safety standards, policies, or conditions as they existed on the date that the ordinance is adopted by the legislative body.

"(2) The interim ordinance is necessary to mitigate or avoid the specific, adverse impact identified pursuant to paragraph (1).

"(3) There is no feasible alternative to satisfactorily mitigate or avoid the specific, adverse impact identified pursuant to paragraph (1) as well or better, with a less burdensome or restrictive effect, than the adoption of the proposed interim ordinance." (Gov. Code, § 65858, subd. (c).)

■ The required findings set forth in paragraphs (1) through (3) of Government Code section 65858, subdivision (c) are more extensive and more specific than the findings required upon the adoption or extension of any interim ordinance. A finding that continued development approvals would pose a current and immediate threat to the public health, safety, or welfare, as described in the first sentence of subdivision (c), alone cannot satisfy the requirements of paragraphs (1) through (3) of subdivision (c).

We believe that to satisfy the requirements of paragraph (1) of Government Code section 65858, subdivision (c), a written finding by the legislative body must identify both (i) a specific, "significant, quantifiable, direct, and unavoidable impact" (ibid.) upon the public health or safety that would result from continued development approvals, and (ii) objective, "written public health or safety standards, policies, or conditions" (ibid.) on which that impact is based.

The ordinance adopted on July 16, 2007, extending the interim ordinance stated that the city council found that there was a "significant unmet need for smaller affordable housing units." The ordinance stated that "[r]ecently approved projects have resulted in a net residential dividend where the number of proposed units substantially exceeded the number of units proposed for demolition," but that a survey of pending projects in the R3 and R4

zoning districts showed that the net residential dividend per project was decreasing. It stated that the result would be "a lower net residential dividend than is desirable to meet the housing needs of the community." It stated that the decreasing net residential dividend together with the significant unmet need for smaller affordable housing units posed "a current and immediate threat to the public health, safety, and welfare," and that the extension of the interim ordinance was "necessary to alleviate and address that threat by prohibiting irreversible development that may be inconsistent with new general plan and zoning standards currently being developed."

The findings in the ordinance failed to identify "a specific, adverse impact upon the public health or safety" (Gov. Code, § 65858, subd. (c)(1)). Although the city council found that the need for affordable housing created "a current and immediate threat to the public health, safety, and welfare" in general, the findings failed to identify any specific impact on public health or safety. The findings also failed to identify any "written public health or safety standards, policies, or conditions" (*ibid.*) on which such an impact would be based. Moreover, the city council made no written finding that there was no feasible, less burdensome or restrictive alternative, as required under paragraph (3). We therefore conclude that the city council failed to make the required additional findings and that the extension of the interim ordinance was contrary to law and invalid.[10] The trial court's judgment with respect to Petitioners' first count in their combined pleading must be reversed.

### 5. *Hoffman Has Shown No Prejudicial Error in the Denial of Relief on the Second Count*

Hoffman alleges in the second count that the city intentionally and improperly delayed the processing of its development application and that its application should be deemed previously completed and exempt from the interim ordinance. The trial court concluded that Hoffman failed to exhaust its administrative remedy in connection with this claim, and did not address the merits of the claim. Hoffman argues on appeal that the exhaustion requirement is inapplicable and, alternatively, that it exhausted the administrative remedy by raising the issue before the city council. Hoffman does not address the merits of the second count.

An appellant bears the burden to show not only that the trial court erred, but also that the error was prejudicial in that it resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Cassim v. Allstate*

---

[10] Our conclusion that the extension of the interim ordinance was invalid because the city council failed to make the required additional findings makes it unnecessary for us to decide whether the extension of the interim ordinance was exempt from CEQA. We therefore will not address Petitioners' third contention.

*Ins. Co.* (2004) 33 Cal.4th 780, 800–802 [16 Cal.Rptr.3d 374, 94 P.3d 513]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105–106 [87 Cal.Rptr.2d 754].) " '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*Cassim, supra*, at p. 800.)

Hoffman does not address the merits of the second count and offers no explanation as to why it was entitled to relief on the merits. Hoffman therefore has failed to show that the alleged error by the trial court was prejudicial.

6. *The Judgment Also Must Be Reversed As to Counts Four Through Seven*

The trial court conducted a hearing on the merits of only the first three counts alleged in the combined petition and complaint, but then entered a judgment in favor of the city on all counts. The record provides no explanation for the entry of judgment on counts that were not addressed at the hearing and as to which the city had not filed any dispositive motion. Absent a dispositive motion or some other appropriate basis for the dismissal, we conclude that the entry of judgment on counts four through seven was error. (*Laraway v. Sutro & Co.* (2002) 96 Cal.App.4th 266, 277–278 [116 Cal.Rptr.2d 823].) By entering judgment on those counts without affording Petitioners an opportunity to be heard, the court deprived them of their right to a fair hearing. The denial of the right to a fair hearing is reversible per se, so no prejudice need be demonstrated. (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 292–293 [77 Cal.Rptr.3d 305].)

Contrary to the city's argument, it is by no means apparent that the trial court's decision on the first three counts effectively disposed of the last four counts. Although the counts all arise from the same factual allegations, counts four through seven may raise legal issues that are distinct from those involved in the first three counts. Moreover, the trial court in the first instance should consider the impact on counts four through seven of our conclusion that the extension of the interim ordinance was invalid as a matter of law. Rather than consider in greater detail the issues raised by counts four through seven, we believe that the appropriate course of action is to reverse the judgment in order to allow the parties to address the merits of those counts before the trial court in the first instance.

## *DISPOSITION*

The judgment is reversed, and the matter is remanded for further proceedings consistent with the views expressed in this opinion. Petitioners are entitled to recover their costs on appeal.

Klein, P. J., and Kitching, J., concurred.