Filed 5/20/15  Marriage of Murphy CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of LORI L. and MARK A. MURPHY. | |
| LORI L. MURPHY,     Appellant,          v. MARK A. MURPHY,     Respondent. | G050452 (Super. Ct. No. FAMMS900478) O P I N I O N |

        Appeal from a judgment of the Superior Court of San Bernardino County, James J. Hosking, Judge.  Affirmed.

        Lori Murphy, in pro. per., for Appellant.

        Law Office of Rebekah Ryan Main, Rebekah Ryan Main and Amanda L. Klimezak for Respondent.

*        *        *

Lori L. Murphy appeals from the judgment dissolving her marriage to Mark A. Murphy. Because the parties share the same last name, we will refer to each by first name, solely for the sake of clarity. (*In re Marriage of Barth* (2012) 210 Cal.App.4th 363, 365, fn. 2.) Lori contends the judgment must be reversed because the trial court erred repeatedly in connection with its rulings on discovery matters, which culminated in its order imposing a terminating sanction against her. She also claims the court erred in the manner by which it conducted the default prove-up hearing, and by failing to properly account for all of the parties' property in its judgment. Finally, Lori also challenges the court's imposition of monetary sanctions against her.

We find no merit in any of these contentions and affirm the judgment.

FACTS

Lori petitioned for dissolution of the parties' marriage in July 2009. She requested that a property located on Sunset Road in Joshua Tree be confirmed as her separate property, and that a property on Memory Lane in Yucca Valley be confirmed as Mark's separate property. She alleged there were no minor children but requested an award of spousal support be made in her favor.

Mark's response to the petition was similar, echoing Lori's allegation there were no minor children, and that the Sunset Road property should be confirmed to Lori as her separate property, while the Memory Lane property should be confirmed to Mark as his property. Mark did not seek any award of spousal support, however, asking instead that the court terminate jurisdiction to award spousal support to Lori. The court initially entered judgment in June 2010, pursuant to the terms of a stipulation reached between the parties in May 2010. The judgment essentially mirrored the terms Lori sought in her petition, including confirmation of the Sunset Road property as Lori's separate property

2

and confirmation of the Memory Lane property as Mark's separate property. Mark was ordered to pay Lori $300 per month in spousal support.

However, on February 15, 2011, Lori filed an order to show cause (OSC) regarding contempt against Mark, alleging he had failed to pay the spousal support obligation established by their marital dissolution judgment.

On March 14, 2011, Mark filed an application to set aside the support order in Lori's favor on the grounds of fraud and perjury, and sought an award of attorney fees. In support of the request, Mark alleged Lori had filed a fraudulent *child support* claim against him in March 2010 – three months before entry of their stipulated marital dissolution judgment, and he did not become aware of that claim until after he entered into the stipulation. It took until December 2010 for Mark to prove he was not the father of Lori's son, who was already three years old when they first met, and he was forced to incur nearly $3,500 in attorney fees defending against that claim. He pleaded not guilty to the contempt, was appointed counsel, and the matter was set for trial.

On August 22, 2011, the court ordered the contempt charge against Mark dismissed with prejudice, and the parties stipulated to vacate the marital dissolution judgment and reopen discovery.

Mark served Lori with interrogatories and a request for production of documents in September 2011, but she did not respond. After an unsuccessful effort to meet and confer, Mark filed motions to compel responses to this discovery, and for an order imposing monetary sanctions, in May 2012. Lori's response to the motion to compel a response to the interrogatories, which she filed in propria persona, was brief and nonsubstantive. She offered no explanation for her failure to respond in a timely fashion, represented she "d[id] not object" to the motion to compel, and requested 30 days to provide the responses. She did object to an award of attorney fees and costs, however, because she believed the matter could "easily be resolved by stipulation without the need

3

for a reply declaration, further briefing or appearance by counsel." And Lori's response to the motion to compel a response to the request for production of documents was both brief and objectively frivolous. She asserted that Mark's "request" to produce documents was not authorized by statute, since Code of Civil Procedure section 2031.010 (all further statutory references are to this code unless otherwise stated) only "permits a party to 'demand' production." She also claimed the request was deficient because it failed to specify a reasonable time and place for production.

At the hearing in June 2012, Mark's attorney described her efforts to get the case resolved in light of Lori's repeated assertions that she "d[id]n't want anything from Mark." However, despite those assertions, Lori refused to cooperate with those efforts. Counsel also explained that the discovery was particularly significant because Mark had information suggesting Lori was still legally married to someone else when they got married – which would make their marriage a nullity – and may also have married again subsequently. Lori, who was present at the hearing without counsel, did not comment on any of those assertions, stating instead that she "would like 30 days to provide the information requested."

The court granted Mark's motions to compel, and imposed discovery sanctions of $750 against Lori for each motion. However, Lori failed to comply with the court's order and in July 2012, Mark moved for additional discovery sanctions, including an order imposing issue sanctions or terminating sanctions, and an order awarding an additional $1,850 in attorney fees and costs against both Lori and her counsel. Mark also sought a $5,000 sanction against Lori pursuant to Family Code section 271, on the ground that her conduct had caused unnecessary delay and expense in the matter and had frustrated the public policy of encouraging cooperation in family law matters.

In a declaration filed in support of that motion, Mark's counsel explained that it was Lori who had been the driving force behind the stipulation to vacate the earlier

marital dissolution judgment because she wanted to pursue an additional award of spousal support. However, after her responses to Mark's discovery were pastdue, she withdrew her pending OSC for an award of support, and her attorney substituted out of the case. Thereafter, Lori steadfastly ignored both her discovery obligation and all efforts by Mark's counsel to discuss a resolution of the disputes. Lori's former attorney then substituted back into the case in July 2012, but made no effort to resolve the ongoing discovery dispute.

Lori filed no opposition to the motion, but both she and her counsel appeared at the hearing scheduled on August 31, 2012. Her counsel asked for a continuance, claiming he never received a copy of the motion and had only become aware of it a few days before the hearing. Counsel also claimed he had tried to serve Lori's responses to the discovery on Mark's counsel back in July when he substituted back in as Lori's counsel, but his effort had been thwarted – first because the only address he had for Mark's counsel turned out to be a post office box, which could not accept his attempted hand-delivery of items on her behalf, and second because when he then attempted to mail those same documents to her at the post office address, they were returned to him by the postal service with an incorrect notation the address was insufficient. Mark's counsel then agreed that the address on the returned envelope, which Lori's counsel had brought with him to the hearing, appeared correct.

However, Lori's counsel also acknowledged that after the envelope was returned to him, he made no further effort to serve the responses, explaining he doubted the integrity of Mark's counsel and believed it would be safer to just hold onto the documents and present them to her on the first occasion they were together in open court. He also acknowledged he made no effort to inform Mark's counsel that the responses had even been prepared. The court then denied the request for continuance and invited Lori's counsel to argue the merits of Mark's motion.

5

Counsel's argument on the merits was that the motion should be denied because he had made a reasonable effort to serve the responses back in July, and could not have been expected to do more. He responded to Mark's counsel's claim that she also had a physical office address, which appeared on her letterhead, by claiming "I don't have any correspondence with her physical address." He offered no response to her point that he should have called her immediately from the post office when he found out it was not her physical office address, or that he could have also called her later or written her a letter informing her of his efforts to serve the responses. Instead, he countered by suggesting she should have done more to affirmatively demand that he comply with the court's earlier order before proceeding to file her sanctions motion. The court flatly rejected that suggestion, noting "[s]he's not required to do anything . . . why should the onus be on her to keep trying to get you and you[r] client to comply with the court order?"

Lori's counsel also pointed out that the request for production of documents had been deficient for failing to specify a reasonable time and place for the production, but was then forced to concede, in response to the court's question, that no timely objection was ever asserted on that basis. The court explained that while a timely objection is a proper response, even if the objection is later deemed without merit, simply ignoring the discovery – as Lori did in this case – "is never proper, and that's when attorney's fees become virtually mandatory."

The court then opened the envelope Lori's counsel brought to court, and directed him to give the proposed discovery responses contained in it to Mark's counsel. The court then granted Mark's motion, and on September 20, the court signed its formal order imposing "issue" sanctions against Lori, including prohibitions against her "supporting her claim for spousal support in any amount or opposing [Mark's] defense to her claim for spousal support" and against her "introducing any evidence or argument

6

regarding spousal support." The court also imposed monetary discovery sanctions against Lori in the amount of $1,850, plus "delay sanctions pursuant to Family Code § 271 . . . [¶] . . . in the amount of $5,000," for a total sanction of $6,850. (Underlining omitted.)

Lori's refusal to provide any meaningful response to Mark's request for production of documents persisted however, and on October 11, Mark filed a motion to compel a further response and for additional discovery sanctions pursuant to sections 2023.010, 2023.030, 2031.310 and 2031.320. He sought monetary sanctions and either further issue sanctions or an order that Lori's pleading be stricken and judgment by default entered against her. In his motion, Mark explained that on the same day Lori provided her largely nonsubstantive response, she also made allegations that she had made contributions to community real property in the amount of $160,000, which came as a surprise to Mark since she had never before mentioned such a claim. His counsel promptly explained her concerns about the insufficiency of the response in a meet and confer letter, and followed up with another letter when the first one drew no response. Lori provided a "minimal" further response following the second meet and confer letter, but expressly refused to comply with statutory requirements governing responses, including the requirement that any representation of inability to comply with a demand for production include the identification of third parties whom she believed might be in possession of responsive documents. (§ 2031.230.)

Four days later, on October 15, 2012, Mark filed an OSC and affidavit for contempt, requiring Lori to appear and show cause why she should not be found guilty of contempt of court and punished for willfully disobeying court orders based on (1) her failure to pay monetary sanctions totaling $8,350, which were imposed by the court on August 31 and September 15, and (2) her violation of the court's June 15 order compelling her to respond to discovery.

7

On November 15, Lori filed a form response to Mark's motion to compel further responses and sanctions, in which she merely indicated she "d[id] not consent" to the relief he requested, and explained that "[b]ecause of the pending contempt action filed in this matter, I am hereby exercising my right to remain silent as to [Mark's] motion to compel until it is finally resolved."

Mark's motion was heard on November 30. The court explained its assessment that Lori had violated subdivision (h) of section 2023.010 in August, had been in violation of subdivision (f) of that section since Mark's first motion to compel was heard and granted, and had been in violation of subdivision (i) of the section "throughout the pendency of the request for production." The court stated that striking Lori's pleading under section 2023.030, subdivision (d)(4) "is the only remedy left available as a trial on the merits of the matter would be simply an ambush and a farce at this point."

Lori's counsel reiterated that her response to the motion was nonsubstantive only "because there is the contempt matter pending." The court suggested the contempt matter was irrelevant to the issues encompassed by the motion to compel as it was specifically directed to Lori's failure to comply with the court's earlier orders, and not related to the alleged adequacy of her subsequent response to the request for production of documents.

On December 14, 2012, the court signed the formal order granting Mark's motion for discovery sanctions and imposing a terminating sanction against Lori, based on her "repeated violations of the Civil Discovery Act." The court struck the petition filed by Lori and "deem[ed] the Response filed by Mark . . . to be the operative pleading and set[] the matter for a default hearing . . . ." The court also imposed a monetary sanction against Lori and her counsel, ordering that each pay 50 percent of $3,939.50 to Mark's counsel.

8

The default prove-up hearing was held on December 18. By that point, Lori's counsel had once again substituted out. Mark's counsel informed the court that Mark had filed an amended response to the petition in August 2011, seeking a declaration of nullity, based upon evidence that Lori was married to someone else at the time of their marriage. The court thereafter heard evidence relating to Lori's prior marriage, and after checking into the matter with the clerk of the court in Ventura County, determined that prior marriage was not valid when Lori and Mark were married. The court then asked Lori "how would you like to proceed?" Lori responded, "As you suggested, the original divorce decree minus the spousal support."

Mark's counsel then asked if the judgment could be entered nunc pro tunc with respect to the property division because the Sunset Road property previously confirmed to Lori as her separate property in the vacated judgment had since been foreclosed upon and then purchased by Mark out of foreclosure. Consequently, that property was presently owned by Mark, and it would be inappropriate to reconfirm it as Lori's separate property as of December 2012. The court asked Lori if she wanted to do that, and she responded, "No." She did not offer any explanation. Mark then confirmed that the Sunset Road property had been lost and repurchased in the period since the vacated dissolution judgment was originally entered. The court then determined that based on the information provided at the default hearing, the Sunset Road property "is no longer subject to characterization or division pursuant to this proceeding."

The court entered the judgment of dissolution on January 18, 2013. The judgment terminated the marriage as of that date, restored Lori's former name to her and jurisdiction to order spousal support to Lori was terminated. The judgment also specified there were no community property assets, that each party was responsible for "one half of Citi financial debt, if any," and that the property on Memory Lane in Yucca Valley was confirmed as Mark's separate property.

On January 29, 2013, Lori filed a notice of appeal from the judgment and from the court's last order imposing terminating and monetary sanctions.

## DISCUSSION

Lori asserts the court erred in numerous ways during the course of this dissolution action. She divides those contentions according to which hearing dates they correspond to. We will address them in that fashion as well.

*1. June 15, 2012, Hearing and Order Compelling Responses and Imposing Monetary Sanctions*

Lori first claims the court erred when it granted Mark's first motion to compel responses to discovery and impose sanctions because: (1) the court was operating on the mistaken belief that she did not oppose either of the requested orders; (2) Mark's request for production of documents did not meet the statutory requirements for a proper demand; and (3) the court improperly allowed Mark to split a single motion to compel responses into two separate motions (relating to the interrogatories and the request for production of documents, respectively) and obtain monetary sanctions for both motions. None of these contentions is persuasive.

Before addressing the merits of these claims, however, we must dispose of Mark's contention that Lori forfeited her right to challenge this order by failing to notice an appeal from them directly, or make specific reference to them in the notice of appeal she filed in January 2013. Contrary to Mark's assertion, this interim discovery order can be addressed as part of an appeal from the judgment itself. As stated in section 906, upon appeal from a judgment, "'the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the

10

rights of a party.'"  This includes otherwise non-appealable discovery orders.  (*Sweeting v. Murat* (2013) 221 Cal.App.4th 507, 511, fn. 6)

Lori's first contention, that the court was operating under the mistaken belief that she did not oppose either of the requested discovery orders, would not entitle her to any relief even if it were correct.  There was no dispute that Mark served Lori with both interrogatories and a request for production of documents, and that she failed to provide a timely response to either, as she was required by statute to do.  (§§ 2030.260 [interrogatories], 2031.260 [production of documents].)  That failure waived any objections Lori might otherwise have asserted in response to that discovery.  (§§ 2030.290, subd. (a) [interrogatories],  2031.300, subd. (a) [production of documents].)  Under those circumstances, Mark was entitled to an order compelling Lori's response to both discovery requests, without objection, whether or not Lori expressed any opposition to the issuance of that order.  Consequently, Lori could not have been prejudiced by any misunderstanding on the court's part concerning her perceived acquiescence to either of the requested orders compelling compliance.  "An appellant bears the burden to show not only that the trial court erred, but also that the error was prejudicial in that it resulted in a miscarriage of justice."  (*Hoffman Street, LLC v. City of West Hollywood* (2009) 179 Cal.App.4th 754, 772; Cal. Const., art. VI, § 13.)

Lori's second argument, that the court erred in compelling her to respond to the request for production of documents, because that request "did not meet the statutory requirements for a proper demand," also fails.  As we have already noted, Lori *waived* any objection to the request for production of documents when she failed to serve a timely response as required by statute.  Having waived those objections, Lori cannot rely on them as a basis for asserting error.

And Lori's third argument is that the court erred by allowing Mark to "split" what she believes should have been a single motion to compel responses to *both*

11

the interrogatories and the request for production of documents, into two separate motions. Lori offers absolutely no authority for the proposition that a party *can file* a single *combined* motion to compel responses to two separate items of discovery, let alone that it could ever be improper for the court to allow such a motion to be "split." We know of none.

Moreover, Lori's implicit assertion that it would have been more efficient for Mark to do so in this case, and that his pursuit of two separate motions meant she was unfairly required to pay duplicative sanctions, is wholly unsupported by either evidence or analysis. It is therefore insufficient to demonstrate any error in the court's sanction order. "'To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error.' [Citation.] '[C]onclusory claims of error will fail.'" (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 337.)

*2. August 31, 2012, Hearing and Order Imposing Issue and Monetary Sanctions*

Lori next challenges aspects of the order stemming from the August 31, hearing. She filed no written opposition to Mark's motion for imposition of issue sanctions and monetary sanctions. Instead, her attorney showed up at the hearing, claiming he had never received the motion, had no opportunity to even read it, and that he had attempted to serve Mark's counsel with the discovery responses two months previously, but gave up when the responses were returned to him in the mail.

Lori first contends the court abused its discretion by refusing to continue the hearing date. She relies on *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697-698 (*Carlton*), for the proposition that when a party was not properly served with the motion, it is appropriate to appear at the hearing and request a continuance. That is correct. However, as *Carlton* also points out, the court is not obligated to believe such a claim,

12

especially where the moving party has a sworn proof of service reflecting that service was properly made. (*Id.* at p. 696 ["The trial court found that 'service was properly effectuated' in this matter. Although the basis of the court's conclusion is not stated in the record, it may be that the court simply did not believe Carlton's claim that he was out of the state on December 26, 1997"].) Here, the trial court made the same finding: "I believe service was properly made."

Although the trial court here did not directly answer Lori's counsel's rather bellicose question in response to its finding that service was proper – "[y]ou're essentially saying I'm lying to the Court?" – it also did not foreclose that inference, nor the inference that counsel was simply mistaken, or that the document might have been lost before he saw it. On appeal, we are obligated to draw all available factual inferences in favor of the court's order. (*Gooch v. Hendrix* (1993) 5 Cal.4th 266, 279 ["'[W]e must consider the evidence in the light most favorable to the prevailing party, giving such party the benefit of every reasonable inference, and resolving all conflicts in support of the judgment'"].) Thus, on this record, we must presume the trial court did not find Lori's counsel persuasive.

In any event, it is well settled that "[t]rial courts generally have broad discretion in deciding whether to grant a request for a continuance." And even when a court abuses that discretion, it would constitute reversible error only if "the denial of a continuance results in the denial of a fair hearing, or otherwise prejudices a party." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527; see *In re Marriage of Johnson* (1982) 134 Cal.App.3d. 148, 154-155.) Here, there was no showing that Lori was prejudiced by the court's denial of the continuance. To the contrary, when Lori's counsel was asked to articulate her opposition to Mark's motion on the merits – and the court explained that "the motion is about one sentence. The motion is the court made a court order for discovery and it wasn't complied with" – counsel relied solely on his previously

13

articulated claim that he had attempted to serve responses to the discovery on Mark's counsel two months earlier, but was unsuccessful.  There is no indication that claim was ignored by the court at the hearing, or that it could have been made more successfully if a continuance had been granted.  Thus, Lori has failed to demonstrate she suffered any prejudice as a result of the court's refusal to continue the hearing.

Lori next argues the court abused its discretion by imposing the issue sanctions because her counsel presented her discovery responses at the hearing, and "there certainly was evidence of a good faith effort" to serve them previously.  We cannot agree.  Again, we begin with the proposition that the court's discretion is broad, and ""'"subject to reversal only for arbitrary, capricious or whimsical action."'"" (*Kayne v. The Grande Holdings Limited* (2011) 198 Cal.App.4th 1470, 1474.)  Moreover, "'[o]nly two facts are absolutely prerequisite to imposition of the sanction:  (1) there must be a failure to comply [with a valid discovery order] . . . and (2) the failure must be willful.'"  (*Young v. Rosenthal* (1989) 212 Cal.App.3d 96, 114.)  Considering the evidence in the light most favorable to the court's ruling, we can easily conclude that both of these facts were established here.  First, there is no question that the court's earlier order was not complied with.  The claim made by Lori's counsel was that he *attempted* to do that, but was thwarted in his effort because the *only address* he had for Mark's counsel – described as the "Arrow Route" address – proved ineffective for either hand delivery or mail delivery.

And the fact that his failure to serve the responses was actually willful can be inferred from other evidence in the record.  First, while Lori's counsel flatly dismissed the representation made by Mark's counsel that the address of her *physical office* was contained on her letterhead (and would have provided a suitable alternative for service), by stating "I don't have any correspondence with her physical address on it," our record demonstrates that statement was either false or very misleading.  Not only is it true that

14

the letterhead used by Mark's counsel contained an address on Laurel Street – the physical address of her office, as she claimed – but it's also clear that Lori's counsel was *very familiar* with that address. In fact, when Lori's counsel first substituted out of the case, that substitution of attorney form was sent to the Laurel Street address. Similarly, when Lori's counsel sent a letter to Mark's counsel in October 2011, he sent it to the Laurel Street address. Thus, it is clear that, contrary to what he implied at the hearing, Lori's counsel did have actual knowledge of that alternative physical address when he was attempting to serve the discovery responses. He just did not use it.

And second, willfulness can be inferred from the fact even assuming Lori's counsel was *genuinely* stumped by his inability to serve the responses to the Arrow Route address, he made no effort thereafter to contact Mark's counsel to resolve the perceived problem. Not so much as a phone call. Instead, he simply held on to the responses, and by his own description, decided to wait until the next court hearing before even letting Mark's counsel know they existed. Perhaps that strategy might have worked out if the next court appearance had come *before Mark had even filed his motion for sanctions*, but it was doomed to failure in the circumstances presented here. The court did not abuse its discretion by imposing the issue sanctions.

Lori also challenges the portion of the court's order imposing significant monetary sanctions against her for failure to comply with its earlier order. However, because the total sanctions awarded against Lori was $6,1850 (including $1,850 in discovery sanctions, plus an additional $5,000 in sanctions pursuant to Fam. Code, § 271) it was directly appealable as "an order directing payment of monetary sanctions by a party . . . if the amount exceeds five thousand dollars ($5,000)." (§ 904.1, subdivision (a)(12).) Lori's failure to pursue that direct appeal in a timely fashion deprives us of jurisdiction to review the order. (*County of San Diego v. State of California* (1997) 15 Cal.4th 68, 110 [when an order is "'immediately and separately appealable' under Code

15

of Civil Procedure section 904.1 . . . the state's attempt to challenge the order in an appeal filed after entry of final judgment . . . was untimely"].)  We consequently do not address it.

*3. November 30, 2012, Hearing and Order Imposing Terminating Sanctions*

Lori next challenges the court's order imposing terminating sanctions against her.  She contends the court erred by allowing the motion to proceed even though she had asserted her constitutional right to remain silent while the OSC re contempt was pending.  Lori argues that because the OSC was directed at her failure to pay prior monetary sanctions, her financial situation – i.e., her ability to pay those sanctions – "was a central issue" in the contempt proceeding.  And because the further discovery responses Mark "was seeking to compel . . . all involved financial matters," "[s]he had an absolute right not to be compelled to respond to these matter[s] while the contempt action was pending."  Her argument is misplaced.

The court never ordered Lori to provide any further responses.  Thus, her right not to be compelled to do so is irrelevant.  If what Lori really means is that she should have been spared the obligation *to file an opposition* to the motion while the OSC was pending, we reject the assertion.  Mark's motion was grounded on the contention that the discovery responses *already provided* by Lori; i.e., the responses finally produced by her counsel at the hearing on his earlier motion, were legally inadequate and did not comply with statutory requirements.  Thus, an appropriate opposition to that motion would have focused on rebutting that *legal argument*.  When Lori chose instead to exercise her "right to remain silent," she waived any right to address the merits of Mark's motion.

Nor are we persuaded by Lori's contention that the court abused its discretion by imposing terminating sanctions.  As we have already stated, the court's

16

discretion to impose discovery sanctions is broad. And while it is true that an order imposing terminating sanctions is appropriate only in egregious circumstances, and "a sanction order cannot go further than is necessary to accomplish the purpose of discovery" (*Newland v. Superior Court* (1995) 40 Cal.App.4th 608, 613), we cannot say the court abused its discretion here. Significantly, the court had *already imposed* issue sanctions that effectively foreclosed Lori's effort to seek an award of spousal support, which was *the sole disputed claim* alleged in her petition for dissolution. Lori's continued obstreperousness, even in the wake of that draconian sanction, suggests that her real goal was simply to extend the fight with Mark, rather than to win anything. It also provides ample support for the trial court's expressed view that allowing the case to proceed to a regular trial would not only deprive Mark of "an effective chance to know any of the evidence that would be presented" but also of "*even [knowing] what the issues are*." (Italics added.) The court did not abuse its discretion.

### 4. *December 18 Hearing and Default Judgment*

Finally, Lori challenges the manner in which the court conducted the default prove-up hearing and its subsequent judgment. She first argues the court erred when it failed to specifically account in its judgment for the Sunset Road property that had been confirmed to her as her separate property in the original (vacated) dissolution judgment. However, as Lori acknowledges, that property went into foreclosure following entry of the original (and since vacated) judgment, and it was later purchased by Mark out of the foreclosure process. These subsequent transfers of title caused the court to conclude the Sunset Road property was no longer subject to allocation as either Lori's separate property, or as marital property, within the marital dissolution action. While Lori characterizes this determination as "unusual," she does not claim it was abstractly improper.

What Lori suggests instead was that it was improper for the court to make that determination about the Sunset Road property without *also* conducting an inquiry as to "why the property went into foreclosure or where [Mark] got the money to purchase the property." She doesn't explain why either of those inquiries might be relevant, and we can think of none. If anything, Lori's attempt to unilaterally expand this marital dissolution action into an inquiry into *the propriety of a tangentially related and independently conducted foreclosure process* underscores the wisdom of the trial court's decision to impose the terminating sanction.

Lori also contends the court erred by "having [her] testify at the default hearing." (Bold omitted.) She states that she attended the hearing only because her arraignment on the OSC re: contempt was scheduled for the same day and time, and that rather than proceeding with that matter first, advising her of her rights and appointing her counsel, the court chose instead to proceed with the default hearing. She suggests this resulted in a violation of her constitutional right to remain silent.

But even assuming there was some error inherent in proceeding on the default prove-up first – and we can discern none – Lori fails to explain how she might have been prejudiced by it. There is no evidence that she was ever sworn as a witness in connection with the default prove-up, let alone that she was made to "testify." At most, the record reflects that the court offered Lori an opportunity to be heard, informally, as to some of the provisions of the proposed default judgment. Nor does Lori explain how the terms of the court's dissolution judgment might have been affected by anything she said at the hearing, or how it would or should have differed in the absence of her input. And most significant, the record reflects that following the court's completion of the default prove-up hearing, the OSC re contempt was withdrawn. Under these circumstances, Lori has shown no error entitling her to relief.

18

DISPOSITION

The judgment is affirmed.  Respondent is to recover his costs on appeal.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


ARONSON, J.


IKOLA, J.

19