[Civ. No. 45646. First Dist., Div. Two. Sept. 26, 1979.]

GUISEPPE PENNISI, Plaintiff and Appellant, v.
DEPARTMENT OF FISH AND GAME et al.,
Defendants and Respondents.

## COUNSEL

David M. Hollingsworth, Kirk F. Schmidt and Charles A. Piccuta for Plaintiff and Appellant.

George Deukmejian, Attorney General, R. H. Connett, Assistant Attorney General, and Christopher M. Ames, Deputy Attorney General, for Defendants and Respondents.

## OPINION

CALHOUN, J.*—Plaintiff, Guiseppe Pennisi (appellant) appeals from a judgment rendered in favor of defendants State of California Fish and Game Department and Director E. C. Fullerton (respondents) in an action brought for declaratory relief.

The summarized facts reveal that in April 1977, trawl nets belonging to appellant, a commercial fisherman, were seized by respondents for the reason that they had undersized net meshes in violation of section 8602 of the Fish and Game Code.[1] Subsequently, two misdemeanor complaints were filed in the municipal court charging appellant with violation of sections 8841, 8831 and 2002. Thereafter, civil actions were brought in the superior court under section 8630 which provides for forfeiture of illegal trawl nets (actions Nos. M 8717, M 8718).

Since the outcome of both the criminal and civil actions, in the final analysis, depends on section 8602, which sets out the manner of determining the length of meshes, appellant initiated a declaratory relief action seeking a judicial interpretation of section 8602 and his rights thereunder. Appellant strenuously contended in the proceeding below

---

*Assigned by the Chairperson of the Judicial Council.

[1]Unless otherwise indicated, all further references will be made to the Fish and Game Code of California.

that, pursuant to the plain meaning of section 8602,[2] the knotted nets (the type of nets owned by appellant and seized by respondents) should be measured in a separate or random fashion, and the statutory requirement that the length of meshes must be determined by taking four meshes while they are simultaneously drawn closely together should be applied only to knotless nets, not involved in the present dispute. The pretrial order limited the issues to the interpretation and constitutionality of section 8602. After receiving evidence and considering the legal arguments of the parties, the trial court, sitting without a jury, decided both issues against appellant by holding that under section 8602 both knotted and knotless nets shall be measured while four meshes are simultaneously drawn closely together and that section 8602 does not suffer from constitutional infirmity due to vagueness or uncertainty.

Appellant assails both of the trial court's rulings. First, appellant claims: (1) the code section in question is clear and unambiguous, and as a consequence its meaning must be ascertained solely from the words used therein (*People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30 [127 Cal.Rptr. 122, 544 P.2d 1322]; *Outboard Marine Corp.* v. *Superior Court* (1975) 52 Cal.App.3d 30 [124 Cal.Rptr. 852]; *People* v. *Van Alstyne* (1975) 46 Cal.App.3d 900 [121 Cal.Rptr. 363]); (2) the plain meaning of the statute is contrary to the interpretation reached by the trial court; and (3) the admission of extrinsic evidence to show legislative intent (i.e., legislative history of § 8602, the legislative objective, contemporary administrative construction, and the like) constitutes prejudicial error. The second major thrust of appellant's argument is that if the interpretation of the trial court is correct, section 8602 is unconstitutional because it is vague and uncertain. As the ensuing discussion will demonstrate, none of appellant's contentions have any merit and as a consequence the judgment below must be affirmed.

*Statutory Interpretation*: Since we are called upon to interpret section 8602, as a threshold matter we set out the basic rules relating to interpretation of statutes. ■ As emphasized time and again, *the fundamental principle of statutory interpretation is to ascertain the intent of the Legislature so as to effectuate the purpose of the law* (*People* ex rel. *Younger* v. *Superior Court, supra,* 16 Cal.3d 30, 40; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]). In

---

[2]As amended in 1973, section 8602 provides: "The length of the meshes of any net shall be determined by taking at least four meshes and measuring them inside the knots *or, in the case of knotless nets, inside the points at which the meshes are joined* while they are simultaneously drawn closely together." (The italicized portion of the statute was added by the 1973 amendment (Stats. 1973, ch. 136, § 1, p. 371).)

determining the legislative intent, the court turns first to the words used in the statute (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1]). *The words, however, must be read in context, keeping in mind the nature and obvious purpose of the statute* where they appear (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]), and the statutory language applied must be given such interpretation as will promote rather than defeat the objective of the law (*Steilberg* v. *Lackner* (1977) 69 Cal.App.3d 780, 785 [138 Cal.Rptr. 378]; *City of L.A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256 [330 P.2d 888]). Finally, *in ascertaining the legislative intent, the courts should consider not only the words used, but* should *also* take into account other matters as well, such as *the object in view,* the evils to be remedied, *the legislative history,* public policy, *and contemporaneous administrative construction* (*English* v. *County of Alameda* (1977) 70 Cal.App.3d 226, 233-234 [138 Cal.Rptr. 634]; *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110]).

■ When tested and analyzed in light of the foregoing principles, the record convincingly demonstrates that, prior to the 1973 amendment, section 8602 (formerly § 848) consistently provided that the length of any net meshes was to be measured by taking four meshes while they were simultaneously drawn closely together.[3] As explained at the trial, this method of taking four meshes piled on each other rather than one mesh at a time served the objective of preventing an excessive stretching of meshes which would distort their size and make their measurement arbitrary. As appears from the oral and documentary evidence received at the trial, the 1973 amendment introduced by Assembly Bill No. 574 was adopted solely for the purpose of providing measuring methods with respect to the knotless nets, and was not aimed at changing the existing system of measuring knotted nets. Thus Director Fullerton, who had testified before the legislative committee dealing with Assembly Bill No. 574, stated at the trial that the thrust of the 1973 amendment was to add a provision for the measurement of knotless nets and not to change the longstanding, established method of measuring knotted nets.[4] The analysis of the legislative counsel also confirms that the bill containing the

[3]Since its enactment in 1933 until 1973, section 8602 (formerly § 848) set out that "The length of the meshes of any net shall be determined by taking at least four meshes and measuring them inside the knots while they are simultaneously drawn closely together" (Stats. 1933, ch. 73, § 848, p. 471; Stats. 1957, ch. 456, § 8602, p. 1451).

[4]The pertinent part of Director Fullerton's trial testimony reads as follows: "BY MR. AMES: Q. What, more specifically, was your testimony to the committee concerning the bill AB 574? A. My testimony concerning adding the—the parts to the section that would

amendment only updated "present law, necessitated by the fact that fishermen generally don't use knotted nets any more."

In addition to the aforestated legislative history, the contemporaneous construction given to the statute makes it also crystal clear that the 1973 amendment to section 8602 did not alter the basic rule that the meshes in both the knotted and knotless nets were to be measured by taking four meshes and piling them on top of each other. Thus, Captain Bradford testified that during his tenure in the department from 1951 through 1976, the agency's requirement was to measure four meshes while they were simultaneously drawn together. His testimony was reaffirmed by both Mr. Kaneen, regional manager of the Marine Resources Region, and Inspector Goodrich. Mr. Kaneen testified that since 1940, the department's policy was to measure four meshes while they were piled up on each other. This information was laid down in procedural guides, bulletins and department manuals sent to marine wardens in charge of the enforcement of the statute. Inspector Goodrich testified as to two department memos dated in 1974 and 1976 which had described the proper method of measuring mesh size under section 8602. Moreover, the inspector underlined that he had explained the department's measurement method and publicly demonstrated the technique to the members of the fishing industry. Finally, Warden Boettcher stated at trial that upon instructions received from Inspector Goodrich he had informed both the other wardens and the fishermen in the Monterey area (including appellant, who was present at the meeting) that the applicable method of measuring mesh size in nets remained the same, that is, the department would measure four meshes while they were simultaneously drawn closely together. It is, of course, elementary that contemporaneous and practical construction of a statute by those who have a duty to carry it into effect is given great weight (*F.T.C.* v. *Mandel Brothers* (1959) 359 U.S. 385, 391 [3 L.Ed.2d 893, 898, 79 S.Ct. 818]; *People* v. *McGee* (1977) 19 Cal.3d 948, 961 [140 Cal.Rptr. 657, 568 P.2d 382]).

Appellant's argument, that considering the clear and unambiguous language of the statute the legislative history and the contemporaneous administrative construction were inadmissible to prove legislative intent and the purpose of the statutory amendment, is ill-founded and must fail for two major reasons.

---

take care of the knotless-net provision. Q. Was there any other testimony concerning the present statute? A. No, there wasn't. *There was no intent to change the present statute at that time, it was just to make addition for knotless nets.*" (Italics added.)

First, it is commonplace that a word is a symbol of thought and as such has no fixed or true objective meaning. The meaning of particular words or groups of words varies with the verbal context and the surrounding circumstances in which the words are used (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 38 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; *Pearson v. State Social Welfare Board* (1960) 54 Cal.2d 184, 195 [5 Cal.Rptr. 553, 353 P.2d 33]). In line with these premises, the "plain meaning rule" advocated by appellant has been severely criticized by 2A Sutherland, Statutory Construction (4th ed. 1973) section 45.02, page 4: "This rule is deceptive, however, in that it implies that words have intrinsic meanings. . . . [A] word is merely a symbol which can be used to refer to different things. . . . It is impossible to determine the referent of the word without a knowledge of the facts involved in its use. . . . It is only through custom, usage, and convention that language acquires established meanings. The assertion in a judicial opinion that a statute needs no interpretation because it is 'clear and unambiguous' is in reality evidence that the court has already considered and construed the act. It may also signify that the court is unwilling to consider matter or evidence bearing on the question as to how the statute should be construed, and is instead declaring its effect on the basis of the judge's own uninstructed and unrationalized impression of its meaning. *Because issues as to what a statute means or what a legislature intended are essentially issues of fact, even though they are decided by the judge and not by a jury, a court should never exclude relevant and probative evidence from consideration.*"[5] (Italics added.)

In the case at bench, the extrinsic evidence in dispute was highly relevant to show the legislative intent underlying the statute. This is especially true with respect to the legislative history of the enactment which furnishes crucial evidence with respect to the measurement of knotted nets, the subject matter of the present controversy. It follows that the trial court was not only free, but also duty bound to admit the challenged extrinsic evidence to ascertain the true intent of the Legislature and to effectuate the purpose of the law.

Second, appellant's argument is untenable for the additional reason that section 8602 is far from being clear or unambiguous. Appellant

---

[5]The scholarly position of Sutherland also finds support in the case law. As the United States Supreme Court put it in *Harrison v. Northern Trust Co.* (1943) 317 U.S. 476, 479 [87 L.Ed. 407, 410, 63 S.Ct. 361], "But words are inexact tools at best, and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history no matter how 'clear the words may appear on "superficial examination." ' " (See also *Lynch v. Overholser* (1962) 369 U.S. 705, 710 [8 L.Ed.2d 211, 215, 82 S.Ct. 1063].)

contends the statutory provisions regulating the measurement of knotted nets are included solely in the first part of the section which provides "The length of the meshes of *any* net shall be determined by taking at least four meshes and measuring them inside the knots" (italics added). However, even a brief analysis is persuasive that if read in isolation, as appellant suggests, the cited portion of the statute suffers from fatal ambiguities. In the first place, it includes " any net," that is, both knotted and knotless nets in an apparent contradiction with the rest of the statutory provisions which purport to regulate the measuring method of the knotless nets. Additionally (and even more to the point), taken out of context and standing alone, the cited part of section 8602 is patently incomplete in that it fails to give any guidance or direction on whether the four meshes shall be measured separately or while they are simultaneously drawn closely together. Or to put it another way, the interpretation of the sentence as recommended by appellant does not give a definite answer as to the seminal issue raised in this case, and as a consequence, even under the authorities cited by appellant (*Outboard Marine Corp.* v. *Superior Court, supra,* 52 Cal.App.3d 30; *People* v. *Van Alstyne, supra,* 46 Cal.App.3d 900; *Skivers* v. *State of California* (1970) 13 Cal.App.3d 652, etc. [91 Cal.Rptr. 707]), the legislative intent must be ascertained by resort to the rules of statutory interpretation, including the admission of relevant extrinsic evidence.

Although unessential for the determination of the case, we note parenthetically that appellant's reliance on *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274], and *People* ex rel. *Younger* v. *Superior Court, supra,* 16 Cal.3d 30, is obviously misplaced. While in both instances it has been pointed out that the courts should give effect to the statutes according to the usual, ordinary import of the language employed in them, the court in each of these cases emphasized that the statutes must be interpreted in accordance with the applicable rules of construction, the most fundamental of which is ascertainment of legislative intent so that the purpose of the law may be effectuated. In harmony with these principles, in *Caudillo* the court did consider the legislative history of the statute involved, and in *Younger* it pointed out that legislative history of the code section was not available and as a consequence it had to dispense with that aspect of the statute and rely solely on the general rules of interpretation.

*Constitutionality of Section 8602:* Appellant's second major contention, that section 8602 is unconstitutional because it is vague and uncertain, requires but a relatively brief discussion.

■ As a general rule, all enactments should be interpreted when possible to uphold their validity. In accordance therewith, it has been held that the courts should construe enactments to give specific content to terms that might otherwise be unconstitutionally vague (*Bloom* v. *Municipal Court* (1976) 16 Cal.3d 71 [127 Cal.Rptr. 317, 545 P.2d 229]; *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 598 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]). Even more importantly, the cases have unanimously concluded that "apparent ambiguities frequently may be resolved by the contemporaneous construction of the Legislature or of the administrative agencies charged with implementing the new enactment." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281]; see also *State of South Dakota* v. *Brown* (1978) 20 Cal.3d 765, 777 [144 Cal.Rptr. 758, 576 P.2d 473]; *Reynolds* v. *State Board of Equalization* (1946) 29 Cal.2d 137, 140 [173 P.2d 551, 174 P.2d 4].)

■ In the present case we are squarely confronted with the latter situation. The record here is replete that the ambiguity of section 8602, if any, was dispelled by respondents who repeatedly explained to the interested members of the fishing industry, including appellant, that the meaning of section 8602 and the practice of the Fish and Game Department was to measure four meshes while they were simultaneously drawn closely together, and that the described method of measurement included both knotted and knotless nets. Since the alleged ambiguity and vagueness of section 8602 was removed by the authoritative construction of respondents, the administrative agency in charge of the enforcement of the enactment, and since official interpretation of the disputed section was brought to the personal attention of appellant, the claim that section 8602 is unconstitutionally vague and/or that appellant's due process rights have been violated due to his ignorance of the true meaning of the statute, must be held totally groundless and be rejected.

In light of our conclusion, the additional issues raised by the parties need not be discussed.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.