[No. F058826. Fifth Dist. Nov. 29, 2010.]

BUILDING INDUSTRY ASSOCIATION OF CENTRAL CALIFORNIA, Plaintiff and Respondent, v.
COUNTY OF STANISLAUS et al., Defendants and Appellants;
CALIFORNIA FARM BUREAU FEDERATION et al., Interveners and Appellants.

584

**COUNSEL**

Shute, Mihaly & Weinberger, Matthew D. Zinn, Mary J. Reichert; John P. Doering, County Counsel, and Thomas E. Boze, Deputy County Counsel, for Defendants and Appellants.

Wilson Sonsini Goodrich & Rosati, Bradford C. O'Brien and Dominique C. Alepin for California Council of Land Trusts as Amicus Curiae on behalf of Defendants and Appellants.

Orrick, Herrington & Sutcliffe, Karen Johnson-McKewan and Matthew Tolve for The Sierra Club, The Planning and Conservation League and Greenbelt Alliance as Amici Curiae on behalf of Defendants and Appellants.

Burke, Williams & Sorensen, Thomas B. Brown; Hanson Bridgett, Thomas B. Brown and Sophia B. Belloli for The League of California Cities and the California State Association of Counties as Amici Curiae on behalf of Defendants and Appellants.

Law Offices of Donald B. Mooney, Donald B. Mooney, Marsha A. Burch; Christian C. Scheuring and Jack L. Rice for Interveners and Appellants.

Sheppard Mullin Richter & Hampton, David P. Lanferman and James G. Higgins for Plaintiff and Respondent.

Christopher M. Whitcomb; Cox, Castle & Nicholson and Kenneth B. Bley for National Association of Home Builders as Amicus Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**LEVY, P. J.**—In December 2007, appellants, the Stanislaus County Board of Supervisors (Board) and the County of Stanislaus (County), adopted an update to the agricultural element of the County's general plan. At issue in this appeal is one component of this update, the Farmland Mitigation Program (FMP).

The FMP is designed to aid in mitigating the loss of farmland resulting from residential development by requiring the permanent protection of farmland through agricultural conservation easements granted in perpetuity. The FMP implementation guidelines provide that farmland mitigation shall be satisfied by the acquisition of an agricultural conservation easement over an equivalent area of comparable farmland. It is the sole responsibility of the developer to obtain the required easement.

Respondent, Building Industry Association of Central California (BIA), challenged the facial validity of the FMP's requirement that a developer dedicate permanent easements as a condition of obtaining development approvals or permits from the County. Appellants California Farm Bureau Federation and Stanislaus County Farm Bureau (Farm Bureau) intervened in support of the County and the Board.

The trial court ruled in BIA's favor finding that the FMP was invalid on several grounds. The court concluded that (1) the FMP conflicts with state law that prohibits a local governmental entity from conditioning the issuance of land use approvals on the granting of conservation easements (Civ. Code,[1] § 815.3); (2) appellants failed to demonstrate a reasonable relationship between the mitigation requirement and any adverse public impacts attributable to new residential development; and (3) the FMP requirements are in excess of the County's police power.

Appellants argue the trial court erred in invalidating the FMP. Appellants dispute the applicability of section 815.3. Appellants first contend that the FMP conservation easements are not conservation easements within the meaning of section 815 et seq. Appellants alternatively assert that the section 815.3 prohibition is inapplicable because an applicant is not compelled to grant an easement but, rather, may satisfy the conservation easement option by arranging for the creation of an easement in the property of a willing third

---

[1] All further statutory references are to the Civil Code unless otherwise specified.

party. Appellants further note that even if section 815.3 does apply, the FMP permits the applicant to mitigate the farmland loss without a conservation easement. Appellants additionally contend that there exists an inherent reasonable relationship between the FMP's requirements and the loss of farmland to residential development. Finally appellants argue that the FMP is within the scope of the County's constitutional police power.

█ As discussed below, the trial court erroneously concluded that the FMP was facially invalid. Accordingly, the judgment will be reversed.

## BACKGROUND

In 1992, the County adopted its first agricultural element. Recognizing both the importance of agriculture to the County's economy and the County's attractiveness to urban development, the County sought to promote and protect local agriculture by the adoption of policies aimed at strengthening the agricultural sector of the economy, preserving agricultural lands for agricultural uses, and protecting the natural resources that sustain agriculture in the County. Noting that "[g]ood agricultural land is a finite, irreplaceable resource," the County included a policy of requiring mitigation of the impacts of farmland conversion "[t]o the greatest extent feasible." However, the agricultural element did not include any specific mitigation measures.

In 2005, the County began the process of updating the agricultural element through an advisory board and an agricultural element update subcommittee. In 2007, the subcommittee presented the first draft of the updated agricultural element for approval. This draft reaffirmed the County's commitment to mitigating farmland conversion but went a step further by specifying that, "[b]ased on a 1:1 ratio, one acre of farmland shall be permanently protected for every one acre of farmland converted to non-agricultural use. The viable option for permanent protection is purchase of a conservation easement on farmland." The draft further provided that the County would be required to adopt guidelines for mitigating the loss of agricultural land.

The Board held a public hearing on this draft in April 2007, at which time BIA submitted comments criticizing the mitigation requirement. The Board did not approve the proposed update but, rather, directed the advisory board to address specific issues that arose during the meeting, including the development of farmland mitigation guidelines.

Before further hearings were held, the subcommittee's revised draft update was made available for public review. This draft included the following proposed mitigation policy:

"Policy 2.15

"In order to mitigate the conversion of agricultural land resulting from a discretionary project requiring an amendment to non-agricultural land use designation, the County shall require the replacement of agricultural land at a 1:1 ratio with agricultural land of equal quality located in Stanislaus County." Mitigation was to be applied consistent with "Farmland Mitigation Program Guidelines." The proposed FMP guidelines were also presented. Those guidelines provide that, for 20-acre or greater parcels, "farmland mitigation shall be satisfied by direct acquisition of a farmland conservation easement as allowed by these guidelines and the Land Trust's program. It shall be the development interest[']s sole responsibility to obtain the required easement." For parcels less than 20 acres in size, the Board may alternatively authorize payment of an in-lieu mitigation fee.

A hearing on the revised update was held before the planning commission on December 6, 2007. The planning commission considered written comments and oral testimony. BIA objected to the FMP on several grounds including the County's failure to identify legal authority for mandating dedication of permanent conservation easements as a condition of general plan administration. BIA noted that "while <u>voluntary</u> agricultural conservation easements are recognized and serve a valuable purpose in California, such easements typically arise out [of] 'freedom of contract' situations, unlike the current proposal to exact such easements." After the hearing, the planning commission voted unanimously to recommend that the Board approve the update as revised.

On December 18, 2007, the Board held a noticed public hearing to consider the planning commission's recommendation. Following deliberations, the Board approved the update by a three-to-two vote with the limitation that the mitigation requirement only apply to conversions of farmland for residential use.

BIA sought judicial review of the validity of the FMP through a complaint and petition for writ of mandate. BIA did "not question the County's underlying assumption that preservation of a viable local agricultural economy may be a worthy subject for public policy interest," but did challenge the legal validity, rationality, and equity of the new FMP mandates.

Following a bench trial, the court ruled that the FMP was invalid. This decision rested on several legal conclusions. The court first held that, because the County required "mitigation" to be provided by a "conservation easement" as defined in section 815.2, the FMP was subject to the limitation

contained in section 815.3, subdivision (b), that "No local governmental entity may condition the issuance of an entitlement for use on the applicant's granting of a conservation easement pursuant to this chapter." Finding that the FMP violated section 815.3, subdivision (b), the court concluded the FMP conflicted with controlling state law and was therefore invalid.

The court further held that the County and the intervening Farm Bureau failed to provide sufficient evidence to demonstrate a reasonable relationship between "the exactions required under the FMP and any adverse public impacts resulting from new applications to change" agricultural land use to residential use. The court additionally found the evidence failed to show that "the exactions mandated by the FMP would or could achieve its ostensible purpose" of mitigating farmland conversion. The court also pointed out that the FMP's requirement that the protected farmland have an "adequate water supply," without further definition, was vague and arbitrary.

Finally, the court concluded that the County failed to demonstrate that it had any particular source of legal authority for the FMP. Based on its finding that the FMP requirements were not reasonably related to the impact of farmland conversion, the court found that the FMP was beyond the scope of the County's police power.

## DISCUSSION

1. *Standard of review.*

■ "Land use regulation in California historically has been a function of local government under the grant of police power contained in article XI, section 7 of the California Constitution." (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1151 [45 Cal.Rptr.3d 21, 136 P.3d 821], fn. omitted.) The power of a city or county to control its own land use decisions derives from this inherent police power, not from the delegation of authority by the state. Thus, local governments have been constitutionally endowed with wide-ranging discretion to formulate basic land use policy. (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 781–782 [38 Cal.Rptr.2d 699, 889 P.2d 1019].)

In adopting or amending a general plan, the local government performs a legislative function. (*Big Creek Lumber Co. v. County of Santa Cruz, supra,* 38 Cal.4th at p. 1152; *Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1195 [24 Cal.Rptr.3d 543].) In reviewing such a legislative decision, the trial court does not inquire whether, if it

had power to act in the first instance, it would have taken the action taken by the local government. Rather, the court's authority is limited to determining whether the action was arbitrary, capricious, entirely lacking in evidentiary support, or unlawfully or procedurally unfair. (*Sherwin-Williams Co. v. South Coast Air Quality Management Dist.* (2001) 86 Cal.App.4th 1258, 1267 [104 Cal.Rptr.2d 288].) Appellate review is under the same standard. (*Ibid.*)

■ Here, the County made a legislative decision to condition approval of the conversion of land from agricultural to residential use on the project developer providing permanent protection of other agricultural land. Such a generally applicable requirement imposed as a condition of development is subject to a "reasonable relationship" level of judicial scrutiny, as opposed to the heightened scrutiny applied to the imposition of land use conditions in individual cases as outlined in *Nollan v. California Coastal Comm'n* (1987) 483 U.S. 825 [97 L.Ed.2d 677, 107 S.Ct. 3141] and *Dolan v. City of Tigard* (1994) 512 U.S. 374 [129 L.Ed.2d 304, 114 S.Ct. 2309]. (*San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 665–671 [117 Cal.Rptr.2d 269, 41 P.3d 87].) Thus, to be valid, this mitigation requirement must bear a *reasonable relationship* to the deleterious public impact of the development project. (*Id.* at p. 671.)

■ As noted above, BIA challenged the facial validity of the FMP. Accordingly, this court will consider only the text of the FMP itself, not its application to the particular circumstances of an individual. (*County of Sonoma v. Superior Court* (2009) 173 Cal.App.4th 322, 337 [93 Cal.Rptr.3d 39].) A facial invalidity claim is tenable only if the terms of the ordinance will not permit those who administer it to avoid an invalid application to the complaining parties. (*San Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 547 [45 Cal.Rptr.2d 117].) " 'This restraint stems from the prudent judicial policy of avoiding officious checking of the political branches of the government.' " (*Ibid.*) The question whether an alleged invalid application of a regulation may be avoided turns upon the court's appraisal of the legal effect of the regulation. (*Ibid.*) The party attacking the regulation must demonstrate its invalidity. (*Action Apartment Assn. v. City of Santa Monica* (2008) 166 Cal.App.4th 456, 468 [82 Cal.Rptr.3d 722].)

2. *Mitigating the future loss of farmland through conservation easements bears a reasonable relationship to the burden caused by residential development.*

The trial court ruled that the County and the Farm Bureau "failed to provide sufficient evidence to demonstrate a reasonable relationship between the exactions required under the FMP and any adverse public impacts

resulting from new applications to change the General Plan or Community Plan designation of lands from 'agricultural' land uses to 'residential' uses." The court further determined that the County's police power did not authorize the FMP because, to be valid, the exactions or dedications must be reasonably related to the purported impacts of new residential development.

Regarding its conclusion that a reasonable relationship did not exist, the court explained that "the record failed to demonstrate that the exactions mandated by the FMP would or could achieve its ostensible purpose, or would provide effective 'mitigation' for the County's re-designation of lands currently designated for agricultural uses on a General Plan or Community Plan to residential uses." The court relied on a statement in the County staff report that " 'It is not the purpose or intent of the FMP to fully mitigate farmland conversion, since a 1:1 ratio is only adequate to protect half of the existing farmland base in Stanislaus County.' " The court further noted that productive farmland is " 'irreplaceable' " and that the FMP policies would not create any new " 'agricultural land.' " In other words, the loss of farmland is considered permanent and results in unavoidable impacts. The court also expressed concern that the FMP mandated "the exaction of 'comparable' land whether or not the land for which a change of designation is sought is actually used for farming or would even be suitable for productive agricultural use." The court summarized its position as follows: "In the absence of evidence demonstrating a substantial relationship between the burden of the exactions and the ostensible purpose for the enactment of the FMP, such FMP mandates appear arbitrary and invalid."

The trial court's analysis is incorrect in several respects. First, the court improperly placed the burden on the County and the Farm Bureau to demonstrate the validity of the FMP. A local entity's land use determination is accorded substantial judicial deference. (*Corona-Norco Unified School Dist. v. City of Corona* (1993) 17 Cal.App.4th 985, 992 [21 Cal.Rptr.2d 803].) BIA, as the party challenging the facial validity of a land use decision, i.e., the FMP, was required to demonstrate that the FMP mandates bear no reasonable relationship to farmland loss "in the *generality* or *great majority* of cases." (*San Remo Hotel v. City and County of San Francisco, supra*, 27 Cal.4th at p. 673.)

Moreover, contrary to the trial court's conclusion, the FMP mandates bear a reasonable relationship to the loss of farmland to residential development. As outlined in the County's updated agricultural element, agriculture is the leading industry in the County generating an annual gross agricultural value in excess of a billion dollars into the local economy. Further, the elements that make the County so well suited for agriculture, i.e., favorable climate, flat land, available water and low-cost power, also make the County attractive

for urban development, including affordable housing within commuting distance of major employment centers.

Noting that agricultural land is a finite and irreplaceable resource, one of the agricultural element's stated goals is to conserve the County's agricultural lands for agricultural uses. Once it is urbanized, productive agricultural land is permanently lost. However, acknowledging that not all agricultural land in the County can be conserved, the agricultural element seeks to balance the need to create housing for an expanding population with the need to protect the County's agricultural lands. To promote this goal, the FMP was adopted.

Under the FMP and its implementation guidelines, the County will not give final approval to a residential development project until the developer provides permanent protection of one acre of farmland for every acre of farmland converted to residential use. Agricultural conservation easements granted in perpetuity are the primary means of accomplishing this permanent protection requirement. Thus, for every acre of farmland lost to residential development in the County, a loss that is permanent, a comparable acre of farmland located in the County is protected from being lost to development in perpetuity.

BIA does not "question the importance of agriculture, or the legitimacy of the professed public interest in attempting to 'conserve' lands suitable for agricultural uses." However, BIA opines that the FMP requirements are arbitrary and without evidentiary support. As discussed above, this was the position taken by the trial court.

We conclude, to the contrary, that the FMP requirements bear a reasonable relationship to the countywide loss of farmland to residential development. Agriculture is the County's leading industry. Real estate development that requires agricultural land to be converted to residential use has a deleterious impact on this valuable resource. Although the developed farmland is not replaced, an equivalent area of comparable farmland is permanently protected from a similar fate. To meet the reasonable relationship standard it is not necessary to fully offset the loss. The additional protection of farmland that could otherwise soon be lost to residential development promotes the County's stated objective to conserve agricultural land for agricultural uses. Further, the requirement of rough proportionality between the mitigation measure and the impact of the development project is met. (Cf. *Environmental Council of Sacramento v. City of Sacramento* (2006) 142 Cal.App.4th 1018, 1040 [48 Cal.Rptr.3d 544].) For every acre of farmland permanently lost to residential development another acre of farmland is permanently protected from residential development. Again, BIA's challenge is to the FMP's facial validity. Thus, we are not considering the application of the FMP to specific

circumstances. Rather, the issue is whether this one-to-one ratio concept is reasonably related to the County's farmland conservation goal. As discussed above, the validity of this concept has evidentiary support.

Accordingly, on its face, the FMP is reasonably related to the County's legitimate goal of conserving farmland to protect the County's agricultural economy. BIA has failed to demonstrate from the face of the FMP that the mitigation requirements bear no reasonable relationship to farmland loss "in the *generality* or *great majority* of cases." (*San Remo Hotel v. City and County of San Francisco, supra,* 27 Cal.4th at p. 673.)

Since a reasonable relationship exists between the FMP requirements and the impacts of converting farmland to residential development, the trial court also erred in concluding that the FMP was not authorized by the County's police power. Land use regulation, such as the FMP, is a function of local government under the constitutional grant of police power. (*Big Creek Lumber Co. v. County of Santa Cruz, supra,* 38 Cal.4th at p. 1151.)

█ Finally, the trial court expressed concern that the FMP was vague and arbitrary because it required preservation of comparable land, whether or not the land to be converted was actually used for farming, and required such comparable land to have an "adequate" water supply without defining "adequate." In other words, these mitigation requirements may not be reasonable. However, such concerns do not invalidate the FMP on its face. A claim of facial invalidity is not supported by suggestions that in some future hypothetical situation problems may possibly arise as to the particular application of the FMP. Rather, the FMP's provisions must inevitably pose a present total and fatal conflict with applicable constitutional prohibitions. (*Action Apartment Assn. v. City of Santa Monica, supra,* 166 Cal.App.4th at p. 468.) Since there has been no showing that these alleged "deficiencies" will unavoidably result in an unconstitutional application of the FMP, they do not invalidate the FMP on its face.

3. *The section 815.3, subdivision (b) provision that prohibits a local governmental entity from conditioning the issuance of land use approvals on the applicant's granting of conservation easements does not invalidate the FMP.*

a. *Conservation easements.*

█ The Legislature, upon finding and declaring "that the preservation of land in its natural, scenic, agricultural, historical, forested, or open-space condition is among the most important environmental assets of California," enacted chapter 4 of title 2 of part 2 of division 2 of the Civil Code (§ 815

et seq.) to further the public policy of encouraging "the voluntary conveyance of conservation easements to qualified nonprofit organizations." (§ 815.) Under this chapter, conservation easement means any written limitation in the form of an easement, restriction, covenant, or condition executed by or on behalf of the landowner that is binding on successive owners. The purpose of such a conservation easement "is to retain land predominantly in its natural, scenic, historical, agricultural, forested, or open-space condition." (§ 815.1.)

A conservation easement is a voluntarily created interest in real property that is freely transferable in whole or in part and is perpetual in duration. (§ 815.2, subds. (a) & (b).) It is not personal in nature, but rather constitutes an interest in real property. (§ 815.2, subd. (c).) "The particular characteristics of a conservation easement shall be those granted or specified in the instrument creating or transferring the easement." (§ 815.2, subd. (d).)

Under section 816, the provisions of this chapter must be liberally construed in order to effectuate the policy and purpose of section 815.

b. *Section 815 et seq. apply to the FMP conservation easements.*

The County and the Farm Bureau contend that the FMP agricultural conservation easements are not conservation easements within the meaning of section 815 et seq. Therefore, they argue, the FMP is not subject to the provision in section 815.3, subdivision (b), that prohibits the County from conditioning land use approval on the granting of a conservation easement. The County and the Farm Bureau point out that the FMP does not refer to section 815 and that there exist other categories of easements that are unaffected by the conservation easement chapter.

The County and the Farm Bureau rely on *San Mateo County Coastal Landowners' Assn. v. County of San Mateo* to support their position. There, the court was faced with a measure that amended the San Mateo County local coastal program. Two of the newly adopted policies required an applicant for land division to grant the county conservation/open space or agricultural easements as a condition of approval. These easements limited the use of the land covered to specified uses consistent with open space or agricultural use. Other requirements for these easements, if any, were not recited by the court. (*San Mateo County Coastal Landowners' Assn. v. County of San Mateo, supra*, 38 Cal.App.4th at pp. 545–546.)

The *San Mateo County Coastal Landowners' Assn.* court determined that the subject easements were not "conservation easements" as defined in section 815.1. The court noted that section 815.3, subdivision (b), does not restrict the ability of a local governmental entity to require the dedication of an

easement under other provisions of law and that the appellants had not denied that there are other existing laws that authorize a local agency to require dedications of easements as a condition of development. The court then concluded that "[c]learly, the county has ample authority to require dedication of agricultural and open space easements under several provisions of law. [Citations.]" (*San Mateo County Coastal Landowners' Assn. v. County of San Mateo, supra*, 38 Cal.App.4th at p. 551.)

In contrast here, although section 815 is not specifically referred to in the FMP, the conservation easement requirements listed in the FMP guidelines squarely meet the definition of a conservation easement under sections 815.1 and 815.2. Section 815.1 defines a " 'conservation easement' " as "any limitation in a deed, will, or other instrument in the form of an easement, restriction, covenant, or condition, which is or has been executed by or on behalf of the owner of the land subject to such easement and is binding upon successive owners of such land, and the purpose of which is to retain land predominantly in its natural, scenic, historical, agricultural, forested, or open-space condition." Under section 815.2, a conservation easement "shall be perpetual in duration" and "shall constitute an interest in real property." (*Id.*, subds. (b), (c).)

The FMP guidelines define an "Agriculture Conservation Easement" (underscoring omitted) as "[a]n easement over agricultural land for the purpose of restricting its use to agriculture." The interest granted "is an interest in land which is less than fee simple." The agriculture conservation easements "shall be established in perpetuity (or shall be permanently protected from future development via enforceable deed restriction)." A qualifying instrument encumbering the land must be executed by all owners of the land and must be in recordable form. Thus, the sections 815.1 and 815.2 requirements are met.

Further, under the FMP guidelines the interest "shall be held in trust by the land trust and/or the County in perpetuity." A land trust is defined as "[a] nonprofit public benefit 501(c)(3) corporation or other appropriate legal entity operating in Stanislaus County for the purpose of conserving and protecting land in agriculture, and approved for this purpose by the Board of Supervisors. The County may be designated as a Land Trust." This land trust qualifies as one of the limited entities or organizations that may acquire and hold conservation easements under section 815.3.

In sum, as defined by the FMP guidelines, the FMP agriculture conservation easement is a conservation easement within the meaning of section 815 et seq. The fact that the FMP guidelines do not specifically refer to section 815 does not change the nature of this conservation easement.

c. *BIA is not prohibited from raising its section 815.3, subdivision (b), claim by Government Code section 65009, subdivision (b).*

Government Code section 65009 provides, in part: "(b)(1) In an action or proceeding to attack, review, set aside, void, or annul a finding, determination, or decision of a public agency made pursuant to this title at a properly noticed public hearing, the issues raised shall be limited to those raised in the public hearing or in written correspondence delivered to the public agency prior to, or at, the public hearing . . . ." The purpose of Government Code section 65009 is "to provide certainty for property owners and local governments regarding decisions made pursuant to this division." (Gov. Code, § 65009, subd. (a)(3).) This "division" refers to division 1, title 7, of the Government Code, known as the "Planning and Zoning Law." (Gov. Code, § 65000.)

The County argues that BIA is barred from raising a section 815.3, subdivision (b), claim because it failed to present this issue during the administrative hearings as required by Government Code section 65009, subdivision (b). The trial court rejected this contention on the ground that Government Code section 65009, subdivision (b), does not apply to legislative acts. In other words, there is no requirement that a party challenging a legislative act, as opposed to an adjudicative act, exhaust its administrative remedies.

█ Contrary to the trial court's conclusion, Government Code section 65009, subdivision (b), is applicable to legislative as well as adjudicative acts. (Cf. *Corona-Norco Unified School Dist. v. City of Corona, supra*, 17 Cal.App.4th at p. 993.) No such distinction is made in the statute itself. It applies to a challenge to a "finding, determination, or decision of a public agency made pursuant to" the Planning and Zoning Law. Such a finding, determination or decision could be in either a legislative or an adjudicatory context.

In support of its finding, the trial court cited *City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277 [258 Cal.Rptr. 795]. While the *City of Coachella* court held that Government Code section 65009, subdivision (b), did not apply to the public agency's adoption of a land use plan, i.e., a legislative act, this holding was based on the fact that the decision was not made pursuant to the Planning and Zoning Law. The court did not base its ruling on the act being legislative as opposed to adjudicative. (*City of Coachella v. Riverside County Airport Land Use Com., supra*, 210 Cal.App.3d at p. 1285.) Accordingly, the trial court's reliance on this case was misplaced.

Similarly, the cases relied on by BIA for the proposition that Government Code section 65009, subdivision (b), does not apply to legislative acts are inapposite. In *Lindelli v. Town of San Anselmo* (2003) 111 Cal.App.4th 1099 [4 Cal.Rptr.3d 453], the court held that the plaintiffs' failure to raise an alleged Elections Code violation at the administrative hearing on an interim waste management contract did not bar the plaintiffs from challenging the contract in the superior court. In so ruling, the court stated "The opportunity to participate in a public hearing prior to a legislative action does not constitute an administrative remedy subject to exhaustion." (111 Cal.App.4th at p. 1105.) However, again, this challenge was unrelated to the Planning and Zoning Law and thus Government Code section 65009, subdivision (b), was inapplicable by its own terms. *Lindelli* concerned the common law doctrine of exhaustion of administrative remedies, a doctrine that is superseded by Government Code section 65009, subdivision (b). (*Kings County Farm Bureau v. City of Hanford* (1990) 221 Cal.App.3d 692, 741 [270 Cal.Rptr. 650].)

Contrary to BIA's argument, *Hoffman Street, LLC v. City of West Hollywood* (2009) 179 Cal.App.4th 754 [102 Cal.Rptr.3d 125] also does not stand for the proposition that Government Code section 65009, subdivision (b), only applies to adjudicative acts. There, the challenge was to a Planning and Zoning Law section concerning the city council's extension of an interim ordinance, a legislative act. The *Hoffman Street, LLC* court found in favor of the petitioners on the ground that under the applicable Government Code section, the city was required to make the findings set forth in the statute and did not do so. In so holding, the appellate court mentioned in a footnote that the trial court had erred in finding that the petitioners failed to exhaust their administrative remedies. (*Hoffman Street, LLC v. City of West Hollywood, supra*, 179 Cal.App.4th at p. 769, fn. 8.) However, the challenge concerned the city's failure to affirmatively comply with a specific statutory mandate, thus rendering the city's action illegal. Moreover, neither the parties nor the court raised the issue of whether Government Code section 65009, subdivision (b), applied. Thus, the applicability of that section under those facts was not decided.

Accordingly, Government Code section 65009, subdivision (b), is applicable here. Nevertheless, section 815.3, subdivision (b), was properly before the trial court.

■ Although BIA did not specifically refer to section 815.3, subdivision (b), during the administrative hearings, it still adequately raised the issue. BIA challenged the FMP on the ground that the County did not have the authority to require involuntary agricultural conservation easements. As discussed above, section 815 et seq. seeks to encourage the *voluntary*

conveyance of conservation easements. One purpose of section 815.3, subdivision (b), is to insure that such conveyances to public entities are, in fact, voluntary. Thus, BIA's criticism of the FMP's proposal to "impose such exactions as a condition of General Plan administration" without legal authority to do so, raised the substance of the section 815.3, subdivision (b), provision that prohibits a local governmental entity from conditioning the issuance of land use approvals on the applicant's granting of conservation easements. "It is not necessary to identify the precise statute at issue, so long as the agency is apprised of the relevant facts and issues." (*McPherson v. City of Manhattan Beach* (2000) 78 Cal.App.4th 1252, 1264 [93 Cal.Rptr.2d 725].)

    d.   *The FMP is not invalid under section 815.3, subdivision (b).*

Section 815.3 provides, in part:

"Only the following entities or organizations may acquire and hold conservation easements: [¶] . . . [¶]

"(b) The state or any city, county, city and county, district, or other state or local governmental entity, if otherwise authorized to acquire and hold title to real property and if the conservation easement is voluntarily conveyed. *No local governmental entity may condition the issuance of an entitlement for use on the applicant's granting of a conservation easement pursuant to this chapter.*" (Italics added.)

The FMP guidelines set forth three farmland mitigation techniques. Where the total land area to be converted to residential use is less than 20 acres in size, "farmland mitigation shall be satisfied by direct acquisition of an agricultural conservation easement or purchase of banked mitigation credits . . . ." Further, the Board may authorize payment of an in-lieu mitigation fee for a less-than-20-acre land area when the development interest can show that it made a diligent, but unsuccessful, effort to obtain an agricultural conservation easement or banked mitigation credits. For total land area of 20 acres or more, mitigation "shall be satisfied" by the direct acquisition of a farmland conservation easement. It is the developer's sole responsibility to obtain this easement. Finally, alternative mitigation methods may be authorized by the Board provided the land will remain in agricultural use.

The trial court concluded that, because the statutes authorizing the creation of conservation easements limit the use of such easements to voluntary transactions, the FMP's requirement that "mitigation" be through a conservation easement obtained by the developer conflicts with, and is forbidden by, the last sentence of section 815.3, subdivision (b). In other words, the

granting of such easements would be involuntary. The court further found that this mitigation requirement, as evidenced by the use of the word "shall," i.e., "farmland mitigation *shall* be satisfied by direct acquisition of a farmland conservation easement . . ." rendered the FMP vulnerable to facial attack.

■ As noted above, the FMP conservation easements are conservation easements within the meaning of section 815 et seq. Accordingly, the easements are subject to the section 815.3, subdivision (b), provision that prohibits the County from conditioning land use approval on the applicant's granting of such a conservation easement. The question is whether the FMP guidelines conflict with that section. Under the circumstances presented here, this is an issue of first impression.

The County first argues that, even if the conservation easement method of mitigation is invalid under section 815.3, subdivision (b), the FMP does not facially violate that section because the FMP also permits mitigation without the use of conservation easements. Thus, the County contends, BIA cannot demonstrate that the FMP is inevitably invalid in all of its possible applications. As discussed above, for total land area of less than 20 acres, the developer may be permitted to pay an in-lieu mitigation fee upon meeting the diligence requirement. Further, for all land areas, the Board may authorize unspecified alternative mitigation methods.

■ However, the primary focus of the FMP is on conservation easements. For all parcel sizes, "farmland mitigation shall be satisfied by direct acquisition of a farmland conservation easement . . . ." For land areas of 20 acres or more, mitigation must be by conservation easement unless some hypothetical alternative is approved by the Board. "[A]lthough we may not invalidate a statute simply because in some future hypothetical situation constitutional problems may arise [citation], neither may we ignore the actual standards contained in a procedural scheme and uphold the law simply because in some hypothetical situation it might lead to a permissible result." (*California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 347 [84 Cal.Rptr.2d 425, 975 P.2d 622].) Here, the "actual standards" set forth in the FMP require the use of conservation easements. Thus, the FMP is subject to a facial challenge under section 815.3, subdivision (b).

On the merits of BIA's challenge, the County argues that the FMP does not violate the section 815.3, subdivision (b), prohibition against conditioning "the issuance of an entitlement for use on the applicant's granting of a conservation easement" because the "applicant," i.e., the developer, is not required to grant the easement. Rather, the FMP allows the applicant to arrange for a third party to voluntarily convey an easement to a land trust or the County. In fact, this is the procedure contemplated by the drafters of the

FMP. Objective 2.4 of the agricultural element states: "A common strategy for mitigating the loss of farmland is to require the permanent protection of farmland based on an identified ratio to the amount of farmland converted. A viable option for permanent protection is *purchase* of an agricultural conservation easement on farmland . . . . The *purchase* of agricultural conservation easements is typically accomplished in one of two methods: 1) the developer works directly with a trust to *purchase* the required conservation easement prior to development or 2) the developer pays a fee to be used by a trust to *purchase* an agricultural conservation easement at a later date." (Italics added.) Accordingly, the County asserts, the FMP does not compel the involuntary creation of an agricultural conservation easement in violation of section 815.3, subdivision (b).

The County further argues that applying section 815.3, subdivision (b), to invalidate the FMP would produce an anomalous result. The County points out that a pure mitigation fee program, in which the developer pays a fee that the local government uses to purchase a conservation easement, would be valid, whereas a program like the one here, in which the developer directly purchases a conservation easement, would not.

BIA counters by characterizing the County's position as a "flimsy sophistry." BIA asserts that, because "the 'substance' of the FMP requires that the applicant (developer) bear the burden ('pay') of obtaining and conveying an easement to a qualified Land Trust or to the County acting as a land trust," the FMP violates section 815.3, subdivision (b). BIA offers the analogy that "[i]t would be just as unlawful to commit theft by holding victim Smith at gunpoint and commanding Smith to obtain and hand over third-party Jones' car as it would be to demand Smith's own car."

Thus, the County urges this court to narrowly and literally interpret each word of this statute whereas BIA asserts that the substance of the statute should guide its construction. To resolve this issue, we first turn to the basic rules relating to statutory interpretation.

■ As has been emphasized time and time again, the fundamental principle of statutory construction is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Pennisi v. Department of Fish & Game* (1979) 97 Cal.App.3d 268, 272 [158 Cal.Rptr. 683].) The statutory language is generally the most reliable indicator of legislative intent. Accordingly, we first examine the words themselves, giving them their usual and ordinary meaning. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166].) However, the words must be read in context, keeping in

mind the nature and purpose of the whole system of law of which the statute is a part. (*Ibid.*) Finally, in ascertaining the legislative intent, we consider not only the words used, but may also take other matters into account such as the object in view, the evils to be remedied, the legislative history, and public policy. (*Pennisi v. Department of Fish & Game, supra*, 97 Cal.App.3d at p. 273.)

When analyzed in light of the foregoing principles, we conclude that the FMP does not facially violate section 815.3, subdivision (b). The section specifically limits the conservation easement prohibition to the *applicant's* granting of a conservation easement. The Legislature could have broadened the scope of this section by deleting the reference to the *applicant* and prohibiting a governmental entity from conditioning the issuance of an entitlement for use *on the granting of a conservation easement*, but did not. Thus, the plain and ordinary meaning of the statutory language supports the County's position.

This interpretation also effectuates the purpose of the conservation easement chapter. That purpose is to encourage landowners to voluntarily convey conservation easements to qualified organizations in order to preserve one of California's most important environmental assets. (§ 815.) Section 816 provides that the provisions of the conservation easement chapter are to be liberally construed to effectuate this policy. Interpreting section 815.3, subdivision (b), narrowly as urged by the County, complies with this mandate. Section 815.3, subdivision (b), prevents a government entity from requiring an involuntary conveyance of a conservation easement and thus, protects the landowner from an unreasonable taking of property rights. Under the FMP, although the developer is required to arrange for the granting of a conservation easement in order to obtain a development approval, most likely by a purchase, no particular landowner is required to grant the conservation easement. The FMP does not require the applicant to grant the easement. In other words, the actual grant of the conservation easement will be voluntary. Accordingly, the FMP promotes the public policy of encouraging the conveyance of conservation easements without running afoul of section 815.3, subdivision (b).

In sum, BIA's facial challenge of the FMP fails. The FMP bears a reasonable relationship to the burden caused by residential development. Further, it is not invalid under section 815.3, subdivision (b). Therefore, the trial court's judgment invalidating the FMP is reversed.[2]

---

[2] BIA's request that this court take judicial notice of the County's 2009 Annual Crop Report is denied on the ground that it is irrelevant to the issues before us.

## DISPOSITION

The judgment is reversed. Costs on appeal are awarded to appellants.

Hill, J., and Detjen, J., concurred.

A petition for a rehearing was denied December 21, 2010, and respondent's petition for review by the Supreme Court was denied February 16, 2011, S189411.